497 S.E.2d 339

Douglas D. FISK, Executor of the Estate of Robert L. Wade, Jr., Tammy Bowman and Brian Dodson Bowman, Plaintiffs,

v.

Russel Dean LEMONS, Janet Lynn Lemons, E.A. Tuckwiller, Jr., The Greenbrier County Commission, The Greenbrier County Sheriff's Department, and Nationwide Mutual Insurance Company, Defendants.

No. 24029.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1997.

Decided Dec. 12, 1997.

Dissenting Opinion of Justice Davis Dec. 15, 1997.

R. Edison Hill, Hill, Peterson, Carper, Bee & Deitzler, and Nancy C. Hill, John K. McHugh, Carey, Hill & Scott, Charleston, for Plaintiffs.

J. Victor Flanagan, Scott D. Maddox, Pullin, Knopf, Fowler & Flanagan, Charleston, for the Greenbrier County Commission and the Greenbrier County Sheriff's Department.

WORKMAN, Chief Justice:

This case is before us upon certified questions from the Circuit Court of Greenbrier County to resolve whether the Greenbrier County Commission ("Commission") and the Greenbrier County Sheriff's Department ("Sheriff") are liable in connection with the commission of negligent acts by an inmate on work release. After considering the questions presented, we determine that The Governmental Tort Claims and Insurance Reform Act (the "Act"), West Virginia Code §§ 29–12A–1 to –18 (1992), does extend immunity to the Commission and the Sheriff under the facts of this case. Based on our conclusion that the public duty doctrine is applicable, the Plaintiffs must prove the existence of a special relationship under that doctrine to recover against the Commission and the Sheriff.

Defendant Lemons was first placed on work release on March 30, 1992, by the circuit court.[1] Beginning in June 1992, Lemons was authorized to do farm work on E.A.

---

1. At the time work release was ordered, Lemons was serving a six-month sentence at the Greenbrier County jail.

Tuckwiller's farm for his work release assignment. On August 12, 1992, Lemons struck a vehicle head-on and killed one individual—Robert Wade, Jr.,—and injured two others—Tammy and Brian Bowman. The vehicle Lemons was driving at the time of the accident belonged to his mother. Lemons pled guilty to DUI causing a death in connection with the accident.

The Plaintiffs in the underlying civil action, Douglas D. Fisk, as Executor of the estate of Robert L. Wade, Jr., and Tammy Bowman and Brian Dodson Bowman brought suit against Lemons, his mother, E.A. Tuckwiller, the Commission, the Sheriff, and Nationwide Mutual Insurance Company.[2] Based on the immunity provisions afforded to political subdivisions [3] in West Virginia Code § 29–12A–5(a)(3) and –5(a)(13),[4] the Commission and the Sheriff filed a motion to dismiss on October 3, 1994. After the circuit court found the motion premature on November 23, 1994, the parties began to engage in discovery. During discovery, it was revealed that Lemons had not been at his work release assignment for twenty-seven days preceding the accident that occurred on August 12, 1992.

At a hearing on May 22, 1995, the circuit court converted the motions to dismiss filed by the Commission and the Sheriff into summary judgment motions and then denied these motions by order entered on September 22, 1995. The lower court, however, entered an order of certification on October 21, 1996, through which it certified the following questions to this Court:

1. Are the defendants, Greenbrier County Sheriff and County Commission, immune from liability for damages to individual plaintiffs and plaintiffs' decedent, under W.Va.Code § 29–12A–5(a)(3), by reason of complying with a lawful order of the Court?

2. Are the defendants, Greenbrier County Sheriff and County Commission, immune from liability for damages to individual plaintiffs and plaintiffs' decedent, under W.Va.Code § 29–12A–5(a)(13), by reason of complying with a court-ordered or administratively-approved work release, treatment or rehabilitation program by releasing an inmate?

3. Must plaintiffs then prove under the "public duty doctrine" that a "special relationship" existed between defendants, Greenbrier County Sheriff and County Commission, and plaintiffs' decedent, which is the basis for an actionable special duty of care, as required by the case of *Randall v. Fairmont City Police Dept.*, 186 W.Va. 336, 412 S.E.2d 737 (1991); that is, must plaintiffs establish by a preponderance of the evidence the following four elements: (1) an assumption by the local governmental entity through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entities' agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agent and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking?

The circuit court answered the first two questions in the negative and the final question in the affirmative.

## I. Statutory Immunity

The first two certified questions present the issue of whether either West Virginia Code § 29–12A–5(a)(3) or –5(a)(13) provide immunity to the Commission and the Sheriff under the facts of this case. The language of subsection (a)(3) extends immunity to politi-

---

2. The Plaintiffs have settled with all the defendants except the Commission and the Sheriff.

3. Both the Commission and the Sheriff qualify as "political subdivision[s]" within the meaning of the Act under the definitional provision found in West Virginia Code § 29–12A–3(c), which expressly includes "any county commission" and "any public body charged by law with the performance of a government function." *Id.*

4. West Virginia Code § 29–12A–5(a)(3) provides that "[a] political subdivision is immune from liability if a loss or claim results from [the] execution or enforcement of the lawful orders of any court." West Virginia Code § 29–12A–5(a)(13) provides that immunity extends to all claims which result from "[a]ny court-ordered or administratively approved work release or treatment or rehabilitation program."

cal subdivisions "if a loss or claim results from" "[e]xecution or enforcement of the lawful orders of any court." W.Va.Code § 29–12A–5(a)(3). Subsection (a)(13) creates immunity when "a loss or claim results from" "[a]ny court-ordered or administratively approved work release or treatment or rehabilitation program." W.Va.Code § 29–12A–5(a)(13). Plaintiffs take the position that because Lemons "was not participating or otherwise acting within the scope of any *bona fide* work-release program" at the time of the vehicular accident, immunity is not afforded pursuant to the provisions of West Virginia Code § 29–12A–5(a)(3) or –5(a)(13). Conversely, the Commission and the Sheriff argue that "[t]he plaintiffs' claims are clearly predicated upon an incident which occurred while Lemons was enrolled, and had been released, in a court-ordered work release program."

■ The circuit court concluded, in its order denying summary judgment to the Commission and the Sheriff, that immunity is not afforded under the Act based on its "belie[f] [that] the purpose of the act is to insulate the county when, in effect, the party defendant is where he is supposed to be but is doing something negligent that causes injury to other persons." Recognized principles of statutory construction constrain us from engaging in the interpretive analysis that the lower court applied to reach its conclusion. "General[ly,] . . . courts may only construe a statute to effectuate legislative intent, and a statute that is clear and unambiguous should be applied by the courts and not construed or interpreted." *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 517, 207 S.E.2d 897, 921 (1974) (citing *State v. Elder*, 152

W.Va. 571, 165 S.E.2d 108 (1968)). As we find the statutory language at issue to be clear and free from ambiguity, we can only apply the Act's terms as stated without injecting our view of the Legislature's intent into the process.

■ Against these axioms of statutory construction, we look to the operative terms in West Virginia Code § 29–12A–5(a)(3) and –5(a)(13). According to the introductory language of this statutory provision, immunity is afforded to political subdivisions for "a loss or claim [that] results from" "[e]xecution or enforcement of the lawful orders of any court." W.Va.Code § 29–12A–5(a)(3). No one disputes that Lemons was on work release pursuant to valid court orders.[5] As the Commission and the Sheriff note, they were required to release Lemons on work release pursuant to the applicable court order. The true dispute below with regard to immunity under the Act arose in connection with the Plaintiffs' contention that Lemons was not "actually participating" in the work release program at the time he caused an accident. Both the Plaintiffs and the circuit court subscribed to the theory that because Lemons had not reported to his work release assignment on the day in question, the Commission and the Sheriff were not entitled to immunity under a statutory provision which required, as a predicate to its invocation, that the claim must result from an approved work release program.[6] This theory takes a narrow and isolated view of the inclusion of work release programs within the statutory provisions affording immunity to political subdivisions.

Plaintiffs' position is essentially that the actions undertaken by Lemons to deceive[7]

---

**5.** Although Plaintiffs state in their appellate brief that "defendants [Commission and Sheriff] completely failed to execute any court order related to a work-release program" on the date of the accident, we do not view the immunity provision that pertains to court orders as requiring the preparation of an order distinct from the order in this case that authorized Lemons to be on work release. There were actually two work release orders prepared by the circuit court that authorized Lemons to be on work release; the initial order was entered on March 30, 1992, and a second one was entered on June 8, 1992, when Lemons' assignment was changed to the Tuckwiller farm.

**6.** Plaintiffs agree that had Lemons been operating a piece of farm equipment at the time he caused their injuries, immunity would unquestionably be afforded by West Virginia Code § 29–12A–5(a)(13).

**7.** The record in this case indicates that Lemons went to elaborate and continuing ends to dupe everyone into believing that he was reporting to the Tuckwiller farm each day. For example, Lemons testified that he would douse his body in gasoline to cover up the smell of alcohol on his breath; step in cow manure to acquire the necessary farm smells; "chew bubble gum" or "eat fireballs" to mask the smell of alcohol; and "put

both the Sheriff and E.A. Tuckwiller had the effect of removing him as a participant in the work release program. Yet, despite Lemons' elaborate subterfuge, he was still being released pursuant to court order each day from the Greenbrier County jail as an authorized participant in a work release program. As the Commission and the Sheriff observe, "there is nothing in the Court's Order, Amended Order, or the West Virginia Code that indicates that an inmate becomes exempt from the guidelines of the work release program the instant that he strays from the program[']s provisions." If that were the case, as the Commission and the Sheriff note, there would be no basis for the Legislature's enactment of an immunity provision expressly designated in connection with work release programs.[8] When, in fact, subsection (a)(13) of West Virginia Code § 29–12A–5 was obviously enacted to provide for scenarios like that present in the instant case where an inmate strays from the expected duties or requirements of the work release program.

■ The provisions of The Governmental Tort Claims and Insurance Reform Act, West Virginia Code §§ 29–12A–1 to –18 (1992), clearly contemplate that immunity will be extended to a political subdivision in connection with a claim arising from a court-ordered or administratively-approved work release program. The facts of this case fit squarely within the provisions of the Act that extend immunity to political subdivisions for claims arising from "[e]xecution or enforcement of the lawful orders of any court" and from "[a]ny court-ordered or administratively approved work release or treatment or rehabilitation program." W.Va.Code § 29–12A–5(a)(3), –5(a)(13). Based on the above reasoning, we conclude that the circuit court erred in its conclusion that immunity is not

extended to the Commission and the Sheriff under West Virginia Code § 29–12A–5(a)(3) or under West Virginia Code § 29–12A–5(a)(13).

## II. Public Duty Doctrine

■ The third certified question involves the issue of whether Plaintiffs are required to demonstrate the existence of a special relationship between themselves and the Commission and Sheriff. This Court has fully resolved the interrelation of the Act and the public duty doctrine, first in *Randall v. Fairmont City Police Dep't,* 186 W.Va. 336, 412 S.E.2d 737 (1991), and more recently in *Holsten v. Massey,* 200 W.Va. 775, 490 S.E.2d 864 (1997). Addressing the continued viability of the public duty doctrine following the Act's enactment, this Court held in *Randall* that

> W.Va.Code, 29–12A–5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection[,]" is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual.

Syl. Pt. 8, 186 W.Va. at 339, 412 S.E.2d at 740; *see also Holsten,* 200 W.Va. at 782, 490 S.E.2d at 871, (acknowledging that "[t]he legislature ... has not expressly abrogated the public duty doctrine in the Act as we recognized in *Randall* ").[9] Based on our de-

---

Visine in my eyes to keep them from being red." Lemons also telephoned Tuckwiller on several occasions to inform him that he could not report to work for illness reasons.

8. We observe that the Act was enacted one year following the enactment of West Virginia Code § 62–11A–3. *Cf.* W.Va.Code §§ 29–12A–1 to –18 (enacted 1986) with W.Va.Code § 62–11A–3 (enacted 1985).

9. We also explained the basis in terms of statutory construction for the continued applicability of

the common law doctrine of public duty in *Holsten* by stating that, " '[o]ne of the axioms of statutory construction is that a statute will be read in context with the common law unless it clearly appears from the statute that the purpose of the statute was to change the common law.' Syl. pt. 2, *Smith v. West Virginia State Board of Educ.,* 170 W.Va. 593, 295 S.E.2d 680 (1982)." *Holsten,* 200 W.Va. at 778, 490 S.E.2d at 867, syl. pt. 5.

cision in *Randall* that the public duty doctrine is "coextensive" with the Act, the circuit court was correct in its ruling that plaintiffs will have to meet the four-part test first enunciated in *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989):

> To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agent and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

*Id.* at 254, 387 S.E.2d at 308, syl. pt. 2. While the circuit court made no finding as to whether Plaintiffs can meet this special relationship test,[10] the Plaintiffs themselves have conceded that they cannot meet this four-criteria test necessary to proceed against the Commission and the Sheriff.

■ In Plaintiffs' attempt to continue their action against the Commission and the Sheriff, they look to the provisions of West Virginia Code § 62–11A–3 (1992).[11] The specific language which Plaintiffs call to our attention is found in subsection (b) of that statute and provides:

> Neither the sheriff, the county commission or community service agency to which the person is assigned shall be liable for injury or damage to third parties intentionally committed by the person so sentenced or for any action on behalf of the person so sentenced except in the case of gross negligence on the part of the sheriff, county commission or community service agency or the supervisor of the person so sentenced. . . .

W.Va.Code § 62–11A–3(b). In their response to the motions to dismiss filed by the Commission and the Sheriff below, Plaintiffs stated that the provisions of West Virginia Code § 62–11A–1 to –4 did not "*apply to the facts of the case at bar.*"[12] Citing the language of West Virginia Code § 62–11A–3(b) specifically, Plaintiffs argued that such language was inapplicable based on the requirement that liability be in connection with "*intentional*" acts committed by a work release inmate. Plaintiffs have made no argument that their claims against Lemons arise from an intentional act; their claims against him arise solely in connection with an automobile accident. Thus, we agree with the Plaintiffs' own acknowledgment that the facts of the case *sub judice* are inconsistent with the cited provisions of West Virginia Code § 62–11A–3(b). Accordingly, we leave for another day the issue of whether that statute, when properly invoked, requires a different conclusion regarding the application of the public duty doctrine.[13]

---

10. We ruled in *Wolfe* that "[t]he question of whether a special duty arises to protect an individual from a local governmental entity's negligence in the performance of a nondiscretionary governmental function is ordinarily a question of fact for the trier of the facts." 182 W.Va. at 254, 387 S.E.2d at 308, syl. pt. 3.

11. The circuit court did not address the applicability of West Virginia Code § 62–11A–3(b) based on Plaintiffs' position below that such section was inapposite. On appeal to this Court, however, Plaintiffs altered their position to argue that such statute was somehow applicable.

12. The record does not reflect that the circuit court addressed the applicability of West Virginia Code § 62–11A–3, and as we have repeatedly held, "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. Pt. 2,

*Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958).

13. Plaintiffs' attempt to bring West Virginia Code § 62–11A–3 into this case stems from their admitted inability to establish a special relationship and thereby get around the public duty doctrine. Citing this Court's statement in *Benson v. Kutsch*, 181 W.Va. 1, 380 S.E.2d 36 (1989), that "[w]e have also recognized that a legislative enactment may affix liability on a city for the protection of a particular class[,]" Plaintiffs suggest that "where liability is predicated on a separate legislative enactment[,]" "the public duty doctrine might not apply." *Id.* at 7, 380 S.E.2d at 42. Since the "separate legislative enactment" that Plaintiffs look to—West Virginia Code § 62–11A–3—does not apply to this case because of the absence of an intentional act committed by Lemons, we do not address the merits of this contention. Nor

Having answered the certified questions, this matter is hereby dismissed from the docket of this Court.

Certified questions answered; case dismissed.

McHUGH, J., deeming himself disqualified, did not participate in the decision in this case.

DAVIS, Justice, dissenting.

(Filed Dec. 15, 1997)

This case presented three certified questions to the Court: (1) Did W.Va.Code, § 29–12A–5(a)(3) immunize the defendants from liability? (2) Did W.Va.Code, § 29–12A–5(a)(13) immunize the defendants from liability? and (3) Did the plaintiffs have to prove a "special relationship" with the defendants? The majority opinion answered yes to all three questions. I believe the answers the majority reached were legally incorrect and were a tortured result. Therefore, I respectfully dissent.

The majority reached the wrong answers in this case because of a basic misunderstanding of the relationship of the various statutes under consideration. Had the majority applied the proper legal analysis, it would have reached a different, but legally correct result. Unfortunately, the majority's conclusion will add confusion to any analysis of immunity under W.Va.Code, § 29–12A–5. The dissenting analysis is set forth in two parts: (1) The Governmental Tort Claims and Insurance Reform Act, and (2) the application of W.Va.Code, § 62–11A–3(b).

## THE GOVERNMENTAL TORT CLAIMS AND INSURANCE REFORM ACT

The certified questions involved provisions contained in the Governmental Tort Claims and Insurance Reform Act (Act). Specifically, the defendants have argued that they are immune from suit under W.Va.Code, §§ 29–12A–5(a)(3) [1] & 29–12A–5(a)(13).[2] The majority opinion adopted this position. In order to reach its position, the majority opinion analyzed the Act as though W.Va.Code, §§ 29–12A–5(a)(3) & 29–12A–5(a)(13) were the *only* provisions contained in the Act. Justice Cleckley appropriately commented in *Bullman v. D & R Lumber Co.*, 195 W.Va. 129, 133, 464 S.E.2d 771, 775 (1995) that:

[W]e commence with the rule that courts are not at liberty to construe any statute so as to deny effect to any part of its language. Indeed, it is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. *See Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374, 381 (1974) ("[w]hen 'interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute ... and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature[.]'" (Citation omitted)). Another rule equally recognized is that every part of a statute must be construed in connection with the whole, so as to make all parts harmonize, if possible, and to give meaning to each. Syl. pt. 1, *Mills v. Van Kirk*, 192 W.Va. 695, 453 S.E.2d 678 (1994); *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990). That is to say, every word used is presumed to have meaning and purpose, for the Legislature is thought by the courts not to have used language idly.

I do not question the determination that no ambiguous language exists in W.Va.Code, §§ 29–12A–5(a)(3) & 29–12A–5(a)(13). However, such determination does not mean that only those two provisions automatically apply to this case. There are a total of 18 sections contained in the Act. Fundamental statutory

---

do we in any way address the viability of West Virginia Code § 62–11A–3.

**1.** W.Va.Code, § 29–12A–5(a)(3) immunizes political subdivisions from a loss or claim resulting from "[e]xecution or enforcement of the lawful orders of any court."

**2.** W.Va.Code, § 29–12A–5(a)(13) immunizes political subdivisions from a loss or claim resulting from "[a]ny court-ordered or administratively approved work release or treatment or rehabilitation program."

analysis dictates that this Court must concern itself with whether or not *any other statutory provision* in the Act qualifies or modifies the language contained in W.Va. Code, §§ 29–12A–5(a)(3) & 29–12A–5(a)(13). (Emphasis added). Had the majority opinion done even a cursory examination of the Act as a whole, it would have found that the immunity under W.Va.Code, §§ 29–12A–5(a)(3) & 29–12A–5(a)(13) has been qualified by another statutory provision in the Act.

In my examination of the Act as a whole, I find that W.Va.Code, § 29–12A–4 enumerates specific conditions that allow a political subdivision to be held liable for a loss or claim. In addition to the Act's specifically enumerated conditions of liability for political subdivisions, W.Va.Code, § 29–12A–4(c)(5) provides in relevant part that "a political subdivision is liable for injury, death, or loss to persons or property *when liability is expressly imposed upon the political subdivision by a provision of this code.*" (Emphasis added).[3] The majority opinion failed to acknowledge the existence of W.Va.Code, § 29–12A–4(c)(5). Moreover, the majority refused to analyze its impact on the immunity granted by W.Va.Code, §§ 29–12A–5(a)(3) & 29–12A–5(a)(13).

W.Va.Code, § 29–12A–4(c)(5) is the controlling provision in this case. It requires that this Court determine whether or not a specific provision exists in the Code which authorizes a cause of action against the defendants in this case, notwithstanding W.Va. Code, §§ 29–12A–5(a)(3) & 29–12A–5(a)(13). The plaintiffs argued, and I agree, that W.Va.Code, § 62–11A–3(b) cannot be ignored. Instead, this section provides the cause of action in this case.

## THE APPLICATION OF W.VA. CODE § 62–11A–3(b)

The majority opinion refused to consider the impact of W.Va.Code, § 62–11A–3(b) in this case,[4] by using the legally unsound argument that the circuit court did not address the provision. Whether or not the circuit court examined the application of W.Va.Code, § 62–11A–3(b) to this case is irrelevant.[5] To properly analyze and answer the legal question necessitates addressing the legal issue because of the immunity exception contained in W.Va.Code, § 29–12A–4(c)(5). We held in syllabus point 6 of *Miller v. Lambert,* 195 W.Va. 63, 464 S.E.2d 582 (1995) that:

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in W.Va.Code, 51–1A–1, et seq., and W.Va.Code, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court. Syllabus Point 3, *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993).

The record shows clearly that defendant Russel Dean Lemons was placed on work release under W.Va.Code, § 62–11A–1. Pursuant to W.Va.Code, § 62–11A–3(b) county commissions and sheriff departments are generally immune from liability for "intentional" acts or "any action" by inmates released for work under chapter 62, article 11A.[6] However, W.Va.Code, § 62–11A–3(b) contains an exception to the general immuni-

---

**3.** In this Court's recent decision in *Holsten v. Massey,* 200 W.Va. 775, 787, 490 S.E.2d 864, 876 (1997), Justice McHugh pointed out that employee immunity under the Act is lost pursuant to W.Va.Code, § 29–12A–5(b)(3) when "[l]iability is expressly imposed upon the employee by a provision of th[e] code."

**4.** W.Va.Code, § 62–11A–3(b) is the specific governmental immunity and liability provision for inmates released for work specifically under chapter 62, article 11A. The relevant language in W.Va.Code, § 62–11A–3(b) provides:

(b) Neither the sheriff, the county commission or community service agency to which the person is assigned shall be liable for injury or damage to third parties *intentionally committed* by the person so sentenced *or for any action* on behalf of the person so sentenced *except in the case of gross negligence on the part of the sheriff, county commission* or community service agency or the supervisor of the person so sentenced. (Emphasis added).

**5.** The majority opinion also chides the plaintiffs for urging the application of W.Va.Code, § 62–11A–3(b) on appeal.

**6.** Chapter 62, article 11A contains work release provisions in W.Va.Code, § 62–11A–1, 62–11A–1a & 62–11A–2.

ty it grants. The statute specifically provides that the immunity it bestows is lost "in the case of gross negligence on the part of the sheriff, county commission or community service agency or the supervisor of the person so sentenced." Clearly, W.Va.Code, § 62–11A–3(b) authorizes a cause of action against a county commission and sheriff department when their gross negligence permits an inmate, released for work under chapter 62, article 11A, to intentionally or otherwise harm a third party.

In the case at hand, the immunity alleged by the defendants under W.Va.Code, §§ 29–12A–5(a)(3) & 29–12A–5(a)(13), is nonexistent as a result of the immunity exception contained in W.Va.Code, § 29–12A–4(c)(5) and the right of action bestowed by W.Va.Code, § 62–11A–3(b). "Statutes relating to the same subject matter, whether enacted at the same time or at different times, and regardless of whether the later statute refers to the former statute, are to be read and applied together as a single statute[.]" Syl. Pt. 1, in part, *Owens–Illinois Glass Co. v. Battle*, 151 W.Va. 655, 154 S.E.2d 854 (1967). *See Mangus v. Ashley*, 199 W.Va. 651, 656, 487 S.E.2d 309, 314 (1997) ("It is axiomatic that a court must whenever possible read statutes dealing with the same subject matter in pari materia so that the statutes are harmonious and congruent, giving meaning to each word of the statutes, and avoiding readings which would result in a conflict in the mandates of different statutory provisions.").

W.Va.Code, §§ 29–12A–5(a)(3) & 29–12A–5(a)(13) are not in conflict with W.Va.Code, § 62–11A–3(b). In addition to chapter 62, article 11A, there are several other independent and separate provisions in the Code which permit inmates to be released for work. *See* W.Va.Code, § 62–11B–5(1)(A); W.Va.Code, § 31–20–9(a); W.Va.Code, § 25–1–3; W.Va.Code, § 17–15–4(a); W.Va.Code, § 7–9–19. However, only W.Va.Code, § 62–11A–3(b) and W.Va.Code, § 17–15–4(d) authorize civil actions against governmental authorities for harm done by inmates on work release pursuant to the latter provisions. Therefore, the immunity granted in W.Va. Code, §§ 29–12A–5(a)(3) & 29–12A–5(a)(13) applies to inmates released to work under statutes other than chapter 17, article 15 and chapter 62, article 11A.[7]

Based upon the above, I believe the wrong result was attained by the Court in this case. The defendants did not have immunity under W.Va.Code, § 29–12A–5(a)(3) or W.Va.Code, § 29–12A–5(a)(13). The plaintiffs have express authority under W.Va.Code, § 62–11A–3(b) to bring this action on a theory of gross negligence. Therefore, the "special relationship" test of *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989) and *Randall v. Fairmont City Police Dep't*, 186 W.Va. 336, 412 S.E.2d 737 (1991) have no application in this case.

I should further note that the result reached by the majority in this case will be a serious impediment to protecting the safety of citizens from persons who are not properly supervised while on work release. It will be interesting to observe how the majority gets out of the legal dilemma it created in this case to insure other victims are protected who have been attacked by work release

7. Obviously, the legislature did not intend under the Act to prohibit governmental liability under *all* work release statutes. The Act was created in 1986. The statute authorizing liability under W.Va.Code, § 17–15–4(d) was enacted in 1943, and the statute authorizing liability under W.Va. Code, § 62–11A–3(b) was created in 1985. Even though the Act was last in time, there are factors which clearly show the legislature *did not* intend to affect the liability authorization in W.Va.Code, §§ 17–15–4(d) & 62–11A–3(b) through its passage of the Act.

First, W.Va.Code, § 17–15–4(d) was last amended in 1987. Prior to the amendment, the statute authorized liability when harm resulted from "the sheriff's neglect, malfeasance or carelessness." The 1987 amendment raised the standard for liability to "gross negligence or malfeasance." Clearly, had the legislature intended to implicitly repeal the liability authorization of W.Va.Code, § 17–15–4(d) through its enactment of the Act, it would not have refined the proof necessary to maintain an action under W.Va. Code, § 17–15–4(d) after it created the Act.

Second, the legislature amended chapter 62, article 11A in 1988, 1989, 1992, 1993, and 1994. At no time during any of those amendments did the legislature repeal or modify in any manner W.Va.Code, § 62–11A–3(b). In other words, had the legislature intended to repeal the liability authorization under W.Va.Code, § 62–11A–3(b) it had numerous opportunities to do so; but, did not.

inmates who are not under proper supervision because of gross negligence. Under the majority's analysis, legislation is unnecessary to reach the result desired by it because the majority acted in lieu of the legislature. Under my analysis, the legislature would be the proper forum to reach the result desired by the majority.