IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 18-0375

_____

FILED

**November 12, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ARTHUR PATTON,
Petitioner

v.

COUNTY OF BERKELEY, WEST VIRGINIA and
BERKELEY COUNTY SHERIFF'S DEPARTMENT, and
DEPUTY JOHN CARDELLO, individually,
and in his capacity as an employee of Berkeley County,
Respondents

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Christopher C. Wilkes, Judge
Civil Action No. 17-C-258

AFFIRMED

_____

Submitted: September 11, 2019
Filed: November 12, 2019

Christian J. Riddell, Esq.
Stedman & Riddell, PLLC
Martinsburg, West Virginia
Counsel for the Petitioner

Charles R. Bailey, Esq.
Michael W. Taylor, Esq.
Bailey & Wyant, PLLC
Charleston, West Virginia
James W. Marshall, Esq.
Bailey & Wyant, PLLC
Martinsburg, West Virginia
Counsel for the Respondents

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "'""Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995).' Syl. Pt. 1, *Albright v. White*, 202 W. Va. 292, 503 S.E.2d 860 (1998)." Syllabus Point 1, *J.F. Allen Corp. v. Sanitary Bd. of City of Charleston*, 237 W. Va. 77, 785 S.E.2d 627 (2016).

2.    "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syllabus Point 1, *Wickland v. American Travellers Life Ins*., 204 W. Va. 430, 513 S.E.2d 657 (1998).

3.    County sheriff's departments and the law enforcement officials they employ are not within the executive branch of state government for purposes of the tolling provisions of West Virginia Code § 55-17-3(a)(2) (2016).

WALKER, Chief Justice:

Petitioner Arthur Patton was arrested on June 2, 2015, by Deputy John Cardello of the Berkeley County Sheriff's Department and eventually pleaded no contest to third offense DUI and fleeing from a law enforcement officer. More than two years later, he sued Respondents Deputy Cardello, Berkeley County and its Sheriff's Department, claiming that his arrest violated his constitutional rights and was intentional infliction of emotional distress and battery. The circuit court dismissed Mr. Patton's claims because he did not file within the two-year statute of limitations. He now appeals the dismissal on the grounds that (1) the circuit judge should have been disqualified from the case; and (2) the tolling provision of West Virginia Code § 55-17-3(a) should have applied once he gave notice of his claim to the Berkeley County Sheriff's Department.[1] We disagree and find that because the sheriff's department is not part of the executive branch of state government, the tolling provision of § 55-17-3(a) did not apply. And, Mr. Patton's allegations that the circuit judge should have been disqualified were properly adjudicated (twice) by the Chief Justice of this Court and are without merit.

---

[1] In asserting that the circuit court erred in finding that Mr. Patton was not entitled to a tolling of the statute of limitation under § 55-7-3(a), Mr. Patton's arguments do not include any assertions with respect to the dismissal of Berkeley County itself, the remaining defendant in this case. Mr. Patton's arguments are solely relegated to the sheriff's department, asking this Court to determine whether county level law enforcement agencies constitute "government agencies" for the purposes of West Virginia Code § 55-17-3.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Patton alleges that on June 2, 2015, Deputy John Cardello used excessive force in apprehending him and beat him so badly that he required facial reconstructive surgery and the insertion of a metal plate into his cheek. He claims that video from Deputy Cardello's "dash-cam" shows him radioing dispatch that Mr. Patton was "making a run for it before [Mr. Patton] had even opened his car door, indicating . . . that Deputy Cardello intended to set up his justification for brutality before engaging with him." Deputy Cardello then rushed Mr. Patton the moment he stepped out of the car. Mr. Patton asserts that the deputy next beat him repeatedly about his body and face while Mr. Patton lay helpless in a river. Mr. Patton also alleges that during criminal proceedings, the dash-cam video disappeared for a long period of time and became the subject of a discovery dispute. The discovery dispute was eventually resolved and the video was produced. Mr. Patton eventually pled no contest to third offense DUI and fleeing from a law enforcement officer.

On May 5, 2017, Mr. Patton sent a notice under West Virginia Code § 55-17-3(a)(2)[2] of intent to file an action to Doug Copenhaver, President of the Berkeley

---

[2] West Virginia Code § 55-17-3(a)(2) (2016) provides:

> (2) The written notice to the chief officer of the government agency and the Attorney General required by subdivision (1) of this subsection is considered to be provided on the date of mailing of the notice by certified mail, return receipt requested. If the written notice is provided to the chief officer of the government agency as required by subdivision (1) of this subsection, any applicable statute of limitations is

County Council. Mr. Patton alleges that this notice tolled the statute of limitations for thirty days from the date the notice was provided and received. On June 5, 2017, Mr. Patton filed his complaint alleging a violation of his constitutional rights, intentional infliction of emotional distress, and battery. Respondents moved to dismiss the complaint, arguing that Mr. Patton had not filed his civil suit within the two-year statute of limitations under West Virginia Code § 55-2-12,[3] and that the statute of limitations was not tolled because the Berkeley County Sheriff's Office did not qualify as a "government agency" under West Virginia Code § 55-17-2(2).[4] The circuit court granted Respondents' joint

tolled for thirty days from the date the notice is provided and, if received by the government agency as evidenced by the return receipt of the certified mail, for thirty days from the date of the returned receipt.

[3] West Virginia Code § 55-2-12 (2016) provides:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Further, civil rights claims filed in state court pursuant to 42 U.S.C.A. § 1983 are personal injury actions governed by state two-year statute of limitations, rather than one-year statute of limitations. 42 U.S.C.A. § 1983; *Rodgers v. Corp. of Harpers Ferry*, 179 W. Va. 637, 371 S.E.2d 358 (1988) *abrogated on other grounds by Courtney v. Courtney*, 190 W. Va. 126, 437 S.E.2d 436 (1993).

[4] West Virginia Code § 55-17-2(2) (2016) provides, in pertinent part:

3

motion to dismiss Mr. Patton's civil action, finding that sheriff's departments are political subdivisions,[5] and that West Virginia Code §§ 29-12A-1 through -18[6] does not contain a notice requirement or any applicable tolling of the general two-year statute of limitations.

---

For the purposes of this section: . . . (2) "Government agency" means a constitutional officer or other public official named as a defendant or respondent in his or her official capacity, or a department, division, bureau, board, commission or other agency or instrumentality within the executive branch of state government that has the capacity to sue or be sued[.]

[5] Under West Virginia Code § 29-12A-3 (2018), a political subdivision is defined in part as:

any county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; . . . public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function . . . .

[6] West Virginia Code § 29-12A-1 (2018) provides:

This article shall be known and may be cited as "The Governmental Tort Claims and Insurance Reform Act."

Its purposes are to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability.

4

The circuit court concluded that Mr. Patton's action was filed outside of the statute of limitations and dismissed the action in September of 2017.

Mr. Patton alleges that following the dismissal of his claims, he learned that the daughter of the circuit judge who adjudicated this case worked as co-counsel on Mr. Patton's criminal case during the discovery dispute regarding the dash-cam video. Because Mr. Patton believed that the daughter was involved in his criminal prosecution and in the dispute about the dash-cam video, he alleged this made her a material witness in the case, giving her more than a de minimis interest in it. So, Mr. Patton filed a motion to disqualify the circuit judge from the underlying civil matter.

In the motion to disqualify the circuit judge, Mr. Patton asserted that after he filed his complaint, he learned that Deputy Cardello initially lied about having previously disclosed the video in discovery, that the State then claimed for a period of months that the video could not be located, and that the video was eventually produced only after his counsel filed a motion to compel and refused to engage in plea negotiations until the video was produced. Mr. Patton alleged that a question existed as to whether there was an attempt to hide or otherwise suppress the video by intentionally misfiling it, or by never actually filing it at all, both of which he argued constituted police or prosecutorial misconduct. Mr. Patton alleged that the daughter's testimony would most likely be needed given her personal involvement in the case.

5

After Mr. Patton's motion to disqualify was denied by then-Chief Justice Loughry on October 3, 2017, Mr. Patton filed a complaint against the circuit judge with the Judicial Investigation Commission (JIC). Next, Mr. Patton filed a supplemental motion for disqualification with this Court informing the Court that he had filed a complaint with the JIC.[7] Then-Chief Justice Workman issued an order denying Mr. Patton's second motion on March 30, 2018.

Meanwhile, Mr. Patton moved to alter or amend the circuit court's judgment, arguing that its decision to dismiss his civil claims was clearly erroneous because a sheriff should be considered a constitutional officer within the executive branch, tolling the statute of limitations under the notice provision of West Virginia Code § 55-17-1.[8] The circuit

---

[7] The JIC published an Advisory Opinion, 2017-16, finding that the Commission did not believe that Rule 2.11 required a *per se* disqualification of a judge from an underlying action simply because a party thereto has filed a judicial ethics complaint against him or her. Instead, it concluded that the judge should disclose the matter on the record to all parties and follow Trial Court Rule 17 where applicable.

[8] West Virginia Code § 55-17-1 (2016) provides:

> (a) The Legislature finds that there are numerous actions, suits and proceedings filed against state government agencies and officials that may affect the public interest. Depending upon the outcome, this type of litigation may have significant consequences that can only be addressed by subsequent legislative action. In these actions, the Legislature is not directly involved as a party. The Legislature is not a proper party to these actions because of an extensive structure of Constitutional protections established to safeguard the prerogatives of the legislative branch under our governmental system of checks and balances. Government agencies and their officials require more notice of these actions and time to

court denied Mr. Patton's motion on April 6, 2018, finding no grounds for reconsideration, as there were no manifest errors of law or fact to be corrected because county sheriff's departments, county commissions, city governments, and individuals employed by those

respond to them and the Legislature requires more timely information regarding these actions, all in order to protect the public interest. The Legislature further finds that protection of the public interest is best served by clarifying that no government agency may be subject to awards of punitive damages in any judicial proceeding.

(b) The Legislature further finds that there are numerous actions, suits and proceedings filed on behalf of the State of West Virginia or a government agency thereof, that may affect the public interest. Depending upon the outcome, this type of litigation may have significant consequences that can only be addressed by subsequent legislative action. In such litigation, the Governor, Department of Administration and the Legislature may not be directly involved as parties. Additionally, the Governor, Department of Administration and the Legislature need advance notice of potential moneys that may become available as a result of seizure or forfeiture of assets under state or federal criminal law. The Governor, Department of Administration and the Legislature require more timely information regarding these actions in order to protect the public interest. The Legislature further finds that protection of the public interest is best served by requiring notice to the Governor, the Secretary of the Department of Administration, the President of the Senate and the Speaker of the House of Delegates of any action brought on behalf of the state or a government agency thereof, which may result in a judgment, award or settlement and when the state or a government agency thereof, becomes eligible for moneys from state or federal seizure or forfeiture of assets in criminal cases.

(c) It is the purpose of this article to establish procedures to be followed in certain civil actions filed on behalf of or against state government agencies and their officials.

7

entities are political subdivisions and are not within the executive branch of state government; and that Mr. Patton did not provide any new evidence that would justify altering or amending the circuit court's prior order. Mr. Patton now appeals that order.

## II. STANDARD OF REVIEW

Regarding our standard of review, "'"[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).' Syl. Pt. 1, *Albright v. White*, 202 W. Va. 292, 503 S.E.2d 860 (1998)."[9] And, "[t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed."[10]

## III. DISCUSSION

### A. *Motion to Disqualify*

In his first assignment of error, Mr. Patton alleges that the circuit judge should have been disqualified from presiding over the case because he had a close family

---

[9] Syl. Pt. 1, *J.F. Allen Corp. v. Sanitary Bd. of City of Charleston*, 237 W. Va. 77, 785 S.E.2d 627 (2016).

[10] Syl. Pt. 1, *Wickland v. American Travellers Life Ins.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

8

member with an interest in Mr. Patton's civil case who, at a minimum, would serve as a material witness. Mr. Patton contends that under West Virginia Code of Judicial Conduct 2.11(A)(2),[11] the circuit judge should have recused himself.

Mr. Patton has previously raised this issue twice before this Court. Both times, the Court denied his request for disqualification.[12] In a letter to this Court responding to the motion to disqualify him, the circuit judge explained that if his daughter was going to have involvement in Mr. Patton's civil case, his recusal was warranted. But at that stage of the proceedings, the case had been dismissed and the only matter left for decision was Mr. Patton's motion to alter or amend the judgment. The only additional

---

[11] West Virginia Code of Judicial Conduct 2.11(A)(2) provides:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: (2) The judge knows that the judge, the judge's spouse or domestic partner, or a person within the third degree of relationship to either of them, or the spouse or domestic partner of such a person is: (a) a party to the proceeding, or an officer, director, general partner, managing member, or trustee of a party; (b) acting as a lawyer in the proceeding; (c) a person who has more than a de minimis interest that could be substantially affected by the proceeding; or (d) likely to be a material witness in the proceeding.

[12] West Virginia trial Court Rule 17.01 provides that "[u]pon a proper disqualification motion, as set forth in this rule, a judge shall be disqualified from a proceeding only where the judge's impartiality might reasonably be questioned, in accordance with the principles established in Canon [2.11] of the Code of Judicial Conduct."

grounds in his supplemental motion for disqualification was that Mr. Patton had filed a complaint against the circuit judge before the JIC. In response to that, the circuit judge stated he did not feel that a voluntary recusal was warranted but recognized that if the circumstances changed and it appeared that his daughter was going to have involvement in the case, his recusal was mandated. Mr. Patton alleges that his motion for disqualification specifically stated that the daughter would, in fact, need to be called as a witness, at least for a deposition, and that the circuit judge's letter did not attempt to reconcile his agreement that a potential conflict would arise should his daughter be involved in the case.

Mr. Patton's motions for disqualification alleged the same facts now presented in this appeal. His motions were denied by prior orders of two Chief Justices, who both determined that the evidence offered by Mr. Patton in support of his motion to disqualify was insufficient to warrant disqualification. "The matter of judicial recusal and disqualification is a matter of discretion reposed solely in the presiding judge and the Chief Justice of this Court."[13] Mr. Patton, now reiterating the same argument, fails to offer any new evidence or argument in support of his assertion that the proceedings below were not fair.[14] As such, we find no error.

---

[13] *State of West Virginia ex rel. Pritt v. Vickers*, 214 W. Va. 221, 222 n.1, 588 S.E.2d 210, 211 n.1 (2003) (citing W. Va. Tr. Ct. R. 17.01 (delineating procedure for motions to disqualify presiding judge)).

[14] *See In re: K.M.*, Case No. 16-0109, 2016 WL 5900710, *3 (W. Va. Oct. 11, 2016) (memorandum decision).

### B. Tolling of the Statute of Limitations

The next issue we consider is whether the sheriff's department is appropriately characterized as a "government agency" under West Virginia Code § 55-17-2. Mr. Patton contends that the circuit court erred when it found that the Berkeley County Sheriff's Department is not a "government agency" for purposes of West Virginia Code § 55-17-2, a finding that, in turn denied him the tolling effect of § 55-17-3(a)(2).

Mr. Patton argues that county-level law enforcement have regularly been held to be members of the executive branch and any ambiguity must be resolved in favor of inclusion. Mr. Patton asserts that under *Webster County Commission v. Clayton*,[15] because a sheriff is allowed to hire persons to aid him or her in the execution of duties as a "constitutional officer of the State," a sheriff is unquestionably a constitutional officer such that any suit brought against a sheriff's department is subject to the notice requirements of § 55-17-3(a)(2).[16] He also contends that in *State ex rel. Miller v. Smith*,[17] and *Games-Neely v. Sanders*,[18] this Court held that prosecuting attorneys are officers of the executive branch of government. Mr. Patton further alleges that § 55-17-6 (2016) provides that the notice

---

[15] 206 W. Va. 107, 113, 522 S.E.2d 201, 207 (1999).

[16] We note that in this case, Mr. Patton has filed suit against the Berkeley County Sheriff's Department, not the Sheriff.

[17] 168 W. Va. 745, 285 S.E.2d 500 (1981).

[18] 220 W.Va. 230, 641 S.E.2d 153 (2013).

11

provision of West Virginia Code § 55-17-3 is to be interpreted broadly,[19] and that county-level governmental agencies have no reason to require less notice than their state-level counterparts so there is no cognizable reason why actions against political subdivisions should not raise the same concerns as "purely state level agencies[.]" We do not find Mr. Patton's arguments persuasive.[20]

Article 17 is entitled "Procedures for Certain Actions against *the State*." Section 55-17-1 provides that the purpose of Article 17 is to establish procedures to be followed in certain civil actions filed *on behalf of or against state government agencies and their officials*. Further, West Virginia Code § 55-17-2(2) provides, in pertinent part:

> "Government agency" means a constitutional officer or other public official named as a defendant or respondent in his or her official capacity, *or a department*, division, bureau,

---

[19] West Virginia Code § 55-17-6(a) (2016) provides that "[i]t is the express intent of the Legislature that the provisions of this article be liberally construed to effectuate the public policy set forth in section one of this article."

[20] While Mr. Patton cherry-picks language from these cases to assert that both sheriffs and prosecutors are members of the state executive branch, these cases are not on point with respect to the issue presented here. While we said in *Clayton* that "Sheriff Clayton [was] allowed to hire persons to aide her in the execution of her duties as a *constitutional officer of the State of West Virginia*. See W.Va. Const. art. IX, § 1," we did not specifically hold that a sheriff is a member of the executive branch of state government. *Id.* at 113, 552 S.E.2d at 207 (Emphasis added). Article IX, § 1 of the West Virginia Constitution simply states: "***County Organization***. The voters of each county shall elect a surveyor of lands, a prosecuting attorney, *a sheriff*, and one and not more than two assessors, who shall hold their respective offices for the term of four years." (Emphasis added). And, a prosecutor, who for certain purposes (like extradition), has duties intertwined with those of the State Attorney General, a member of the executive branch of state government, is not akin to a sheriff's department. Thus, those cases have no bearing on the issue before us.

board, commission or other agency or instrumentality *within the executive branch of state government* that has the capacity to sue or be sued[.][21]

West Virginia Code § 55-17-3(a)(2) further provides:

(2) The written notice to the chief officer of the *government agency* and the Attorney General required by subdivision (1) of this subsection is considered to be provided on the date of mailing of the notice by certified mail, return receipt requested. If the written notice is provided to the chief officer of the *government agency* as required by subdivision (1) of this subsection, any applicable statute of limitations is tolled for thirty days from the date the notice is provided and, if received by the government agency as evidenced by the return receipt of the certified mail, for thirty days from the date of the returned receipt.[22]

There is no definition of "executive branch" provided in West Virginia Code § 55-17-1, but Article VII, § 1 of the West Virginia Constitution provides that the executive department consists solely of "a governor, secretary of state, auditor, treasurer, commissioner of agriculture and attorney general, who shall be ex officio reporter of the court of appeals." While a sheriff's department performs executive functions, it is an executive agency of the *county* government. Sheriff's departments are funded at the county

---

[21] (Emphasis added).

[22] (Emphasis added).

13

level, are not included in the state budget, and are county organizations under Article IX, § 1 of the West Virginia Constitution.[23]

This Court recently refused to extend the tolling provision at issue here to local agencies. In *Magee v. Racing Corporation of West Virginia*,[24] this Court was not directly asked to consider whether the Nitro police department, city, and an officer were "government agencies" within § 55-17-2. But, we concluded that the statute of limitations was not tolled as to these agencies even though the police department was given a thirty-day notice in that matter, as in this case.[25] The petitioner in that matter treated the city entities as non-state governmental defendants.

The circuit court found an unpublished opinion from the Southern District of West Virginia, *Braxton v. Joynes*,[26] instructive. In *Joynes*, the plaintiff filed an action against Mr. Joynes, John A. Dunn of the Raleigh County Sheriff's Department, Garland A. Burke of the Fayette County Sheriff's Department, Gant Montgomery of the Beckley City Police, the Raleigh County Commission, the Fayette County Commission, and the City of

---

[23] See footnote 20 *supra.*

[24] Case No. 17-0008, 2017 WL 4993455 (W. Va. Nov. 1, 2017) (memorandum decision).

[25] *See Id.* at * 1 n.2 (Despite the Magees' pre-suit notice to the City of Nitro, it is not a "government agency" as defined by West Virginia Code § 55-17-2(2)).

[26] Case No. 5:04-0894, 2005 WL 2249865 (S.D.W. Va. Sept. 15, 2005).

Beckley, among others, alleging violations of the Equal Protection and Due Process clauses of the United States Constitution pursuant to 42 U.S.C. § 1983 and violations of the West Virginia Constitution.[27] The defendants moved for summary judgment contending that plaintiff's claims were barred by the relevant statute of limitations and because defendants Joynes, Dunn, Burke, and Montgomery were immune from liability.[28] In granting the defendants' motion for summary judgment, the District Court held:

> *[c]ounty commissions, city governments or the individuals employed by those entities are not considered to be within the "executive branch of state government." Therefore, § 55-17-3 upon which Plaintiff relies in is inapplicable to this action.* Rather, claims against such entities are controlled by the Governmental Tort Claims and Insurance Reform Act . . . Pursuant to [that Act] in [an] action against a political subdivision the complaint and summons must be served "in the manner prescribed by law for the rules of civil procedure." W. Va. Code § 29-12A-13(d). Thus, unlike suits against a "government agency" there is no notice requirement nor is there a tolling of the applicable statute of limitations.[29]

Finding *Braxton* persuasive as to the specific issue before us, this Court holds that county sheriff's departments and the law enforcement officials they employ are not within the executive branch of state government for purposes of the tolling provisions of West Virginia Code § 55-17-3(a)(2).[30] West Virginia Code § 29-12A-6 does not contain a

---

[27] *Id*. at *1.

[28] *Id*.

[29] *Id.* at *3 (emphasis added).

[30] *See* Syl. Pt. 2, *Beckley v. Crabtree*, 189 W. Va. 94, 428 S.E.2d 317 (1993) *modified on other grounds by Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002)

requirement to provide a political subdivision with a notice of intent to file suit, nor does

it contain a tolling exception to the statute of limitations when the plaintiff provides notice

of intent to file suit against a political subdivision.[31] For these reasons, we conclude that

---

(a sheriff is an employee of a political subdivision, the county commission, and is therefore immune from personal tort liability for acts occurring within the scope of employment, unless one of the exceptions noted in W. Va. Code § 29-12A-5(b) is applicable.); *See also Haney v. Cty. Comm'n, Preston Cty.*, 212 W. Va. 824, 827, 575 S.E.2d 434, 437 (2002) (county commission is a political subdivision of the state); *Fisk v. Lemons*, 201 W. Va. 362, 363, 497 S.E.2d 339, 340 (1997) (analyzing cause of action against county sheriff's department as a political subdivision.)

[31] West Virginia Code § 29-12A-6 (2018) provides, in pertinent part:

> (a)  An action against a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, except as provided in subsection (b) of this section, shall be brought within two years after the cause of action arose or after the injury, death or loss was discovered or reasonably should have been discovered, whichever last occurs or within any applicable shorter period of time for bringing the action provided by this code. This section applies to actions brought against political subdivisions by all persons, governmental entities, and the state.

> . . . .

> (c) The periods of limitations set forth in this section shall be tolled for any period during which the political subdivision or its representative has committed fraud or collusion by concealing or misrepresenting material facts about the injury.

the circuit court properly determined that West Virginia Code § 55-17-3(a)(2) did not apply to toll Mr. Patton's claims against the Respondents before us in this case.

## IV. CONCLUSION

For the reasons stated above, the April 6, 2018 order of the Circuit Court of Berkeley County denying Mr. Patton's Motion to Alter or Amend Judgment is affirmed.

Affirmed.

17