534 S.E.2d 385

**In re the EXTRADITION OF Andrew CHANDLER.**

No. 26906.

Supreme Court of Appeals of West Virginia.

Submitted April 12, 2000.

Decided July 10, 2000.

Roy David Arrington, Esq., Marlinton, West Virginia, Attorney for Chandler.

Darrell V. McGraw, Jr., Esq., Attorney General, David P. Cleek, Esq., Senior Deputy Attorney General, Charleston, West Virginia, Attorneys for State of West Virginia.

MAYNARD, Chief Justice:

The appellant and petitioner below, Andrew Chandler, appeals the final order of the Circuit Court of Pocahontas County, West Virginia, which denied his petition for a writ of habeas corpus. He was seeking habeas corpus relief from arrest and custody pursuant to a rendition warrant issued by the Governor of West Virginia in response to a request from the Governor of Ohio for his extradition to that State for the crime of unlawful failure to pay child support. We affirm.

Andrew Chandler was previously married to Gail Chandler. Two children were born to the marriage. In 1985, Andrew Chandler and Gail Chandler sought and were granted a divorce in Ohio. Gail Chandler was awarded custody of both children. After divorcing, Andrew Chandler and Gail Chandler entered into a written agreement in which he agreed to give her his one-half of their jointly owned business in exchange for child support. An-

drew Chandler later moved to Pocahontas County, West Virginia.

In 1991, the State of Ohio filed a URESA action [1] against the appellant demanding that he pay child support. On September 24, 1992, the Court of Common Pleas of Medina County, Ohio ordered Andrew Chandler to pay child support retroactive to May 15, 1992. On August 5, 1993, the West Virginia Child Advocate's Office represented the State and the children in a hearing before the family law master in Pocahontas County. The circuit court entered an order adopting the recommendations of the law master on August 17, 1993. The order stated that the appellant owed a duty to pay child support for the minor children but that he was unemployed and that Gail Chandler had waived her right to child support arrearages for the transfer of property. The order further provided that the appellant would provide insurance coverage for the children when it became available at a reasonable rate through his employer.

The Court of Common Pleas of Medina County, Ohio chose not to recognize the West Virginia order but, instead, entered an order on July 12, 1994, finding that the appellant had been in default with regard to child support payments since January 6, 1992. The appellant was not present at the court proceeding and a capias was issued for his arrest for failure to appear. Following a hearing in the Circuit Court of Pocahontas County regarding whether the 1993 West Virginia order should be modified, the circuit court entered an order finding that no petition for modification had been filed nor was any document filed which alleged a material change of circumstances, and no petition for modification was served on the appellant. As no petition for modification existed, the court concluded that no document existed which would give the family law master jurisdiction to modify the original order.

Nonetheless, on July 2, 1996, the appellant was indicted by the Ohio grand jury for two felony offenses of unlawfully failing to provide child support. He was arrested in West Virginia on a fugitive from justice warrant. The Governor of Ohio requested that he be extradited to Ohio to stand trial on the charges. The appellant applied for appointed counsel on January 29, 1999, and counsel was appointed to represent him. The appellant, by counsel, filed a writ of habeas corpus challenging his arrest for nonpayment of child support. He alleged he committed no offense and that the documentation supporting that contention is lodged in Pocahontas County.[2] He claimed he received no notice of the Ohio hearing, wherein the State of Ohio ignored the West Virginia ruling denying child support and found him to be one hundred two weeks in default. The appellant argued that the State of Ohio must give full faith and credit to West Virginia's orders.

In the habeas action, the circuit court reasoned:

that the asylum state is limited to considering whether the extradition papers are in proper form; whether there is a criminal charge pending in the demanding state; whether the petitioner is the person named in the extradition papers; whether the petitioner had committed some overt act in furtherance of the crime subsequently consummated or had committed or (failed to commit) an act indicative of an intent to commit the crime or which can be construed as a step in the furtherance of the crime afterwards consummated.

The court then determined that the nature of the offense did not necessarily require the presence of the petitioner in the State of Ohio and concluded that the petitioner's arguments did not present a valid defense to the extradition. Upon further argument at a later date, the court finally denied the habeas petition and adopted its former ruling. It is from this order that the appellant appeals.

In his brief to this Court, the appellant admits that if the documentation in an extradition proceeding is minimally sufficient and

1. Uniform Reciprocal Enforcement of Support Act, W.Va.Code §§ 48A–7–1 to 41; this act was repealed in 1998 and superseded by the Uniform Interstate Family Support Act, W.Va.Code §§ 48B–1–101 to 48B–9–903.

2. The documentation to which the appellant refers consists of two orders entered in the Child Advocate Office action.

the proper procedure is substantially followed, there exists no defense as a general proposition to extradition. He also admits that according to West Virginia law, the merits of the defense of the person to be extradited are not relevant. But he goes further. He asks this Court to inject into extradition proceedings elements which do not exist in the statute, namely, the balancing of equities and due process.[3] We decline to do so.

West Virginia's Uniform Criminal Extradition Act (Extradition Act) is located at W.Va. Code §§ 5-1-7 to 13 and states in pertinent part:

(b) Subject to the provisions of this article, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state: Provided, That the demand or application of the executive authority of such other state is accompanied by an affidavit or sworn evidence that the demand or application is made in good faith for the punishment of crime, and not for the purpose of collecting a debt or pecuniary mulct, or of removing the alleged fugitive to a foreign jurisdiction with a view to serve him there with civil process.

(c) No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under subdivision (g) of this section, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found, or by information supported by affidavit, in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate or justice there, together with a copy of any warrant which was issued thereupon; or by a copy of a judgment of conviction or a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information, or affidavit made before the magistrate or justice must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand.

W.Va.Code § 5-1-7(b) and (c) (1937).

This Court previously discussed the Extradition Act and enumerated the factors the asylum state may consider when a petitioner files a writ of habeas corpus to challenge extradition. In commenting on the limited role the asylum state plays, this Court said:

"In habeas corpus proceedings instituted to determine the validity of custody where petitioners are being held in connection with extradition proceedings, the asylum state is limited to considering whether the extradition papers are in proper form; whether there is a criminal charge pending in the demanding state; whether the petitioner was present in the demanding state at the time the criminal offense was committed; and whether the petitioner is the person named in the extradition papers." Point 2, Syllabus, *State ex rel. Mitchell v. Allen*, 155 W.Va. 530, 185 S.E.2d 355 (1971).

Syllabus Point 1, *State ex rel. Gonzales v. Wilt*, 163 W.Va. 270, 256 S.E.2d 15 (1979). The appellant in the case at bar does not contend the extradition papers are not in proper form or that criminal charges are not pending against him in Ohio. Nor does he argue that he was not present in the demanding state or that he is not the person named in the extradition papers. Rather, he makes a novel argument which goes as fol-

---

**3.** The appellant believes that West Virginia should recognize that a written agreement executed between parties is a due process safeguard.

lows. West Virginia's extradition statute contains no provision for balancing of equities; due process requires balancing of equities; the equities in his case "scream for attention."

 We assume the equities he refers to are the agreement he entered into with his ex-wife and the two orders entered by the Circuit Court of Pocahontas County. He believes that based on this evidence he is innocent of the two crimes with which he is charged. What the appellant fails to recognize is that an extradition proceeding is not the place to make this argument. In fact, W.Va.Code § 5–1–9(k) (1937) clearly states:

(k) The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as provided in this article shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime.

The appellant must ask the courts in Ohio to balance the equities in his case.

 The appellant proceeds to argue that the State of Ohio is bound by the Full Faith and Credit Clause of the United States Constitution and must, therefore, give full faith and credit to the two orders entered in West Virginia. He actually appears to be arguing that West Virginia can force Ohio to give full faith and credit to these orders. The appellant once again makes his argument in the wrong forum. If he wishes to argue his innocence based on full faith and credit, he must also take that argument to the courts in Ohio. This Court has previously said, "The courts in an asylum state cannot determine constitutional questions with regard to crimes charged against fugitives in a demanding state in habeas corpus proceedings challenging the validity of extradition warrants. It is for the courts of the demanding state to determine such questions in the first instance." Syllabus Point 1, *State ex rel. Mitchell v. Allen,* 155 W.Va. 530, 185 S.E.2d 355 (1971).

 The Circuit Court of Pocahontas County properly resolved the extradition inquiries involved in this case. As we previously stated, the appellant does not argue the extradition papers are not in proper form, that a criminal charge is not pending against him in another state, that he was not present in Ohio, or that he is not the person named in the extradition papers. The requirements of the extradition statute are met, so the extradition must take place.

For the foregoing reasons, the circuit court's order denying the appellant's petition for a writ of habeas corpus is affirmed.

Affirmed.