422 S.E.2d 640

**STATE of West Virginia, Appellee,**

v.

**Patricia Sue BELCHER, Defendant Below, Appellant.**

**No. 21201.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1992.

Decided Oct. 9, 1992.

J. Roger Smith, II, Asst. Atty. Gen., Charleston, for appellee.

Michael A. Lawrence, Public Defender's Office, Princeton, for appellant.

PER CURIAM:

This case is before the Court on the appellant's motion to quash Governor Gaston Caperton's August 28, 1991, order of extradition to the State of Texas. By order dated November 22, 1991, the Honorable John Frazier of the Circuit Court of Mercer County denied the appellant's motion for a writ of habeas corpus. The appellant, Patricia Sue Belcher, appeals from that final ruling.

The appellant and her husband were married in Texas in 1985. In 1991, her husband filed for a divorce. On April 8, 1991, the husband was given temporary custody of their two children, ages two and four. The divorce was not final at that point, and to the best of our knowledge, is still pending in Texas. At the conclusion of

the hearing, the appellant was given time to say good-bye to the children, but instead, "with children in tow, Patricia Sue caught the next bus to Welch, West Virginia."

On May 24, 1991, the Potter County, Texas, grand jury returned an indictment against the appellant for "interference with child custody." On August 26, 1991, Texas Governor Ann Richards requested that Governor Caperton return the appellant to Texas to face the criminal charges. On August 28, 1991, Caperton signed the extradition order. On November 22, 1991, Judge Frazier denied her petition for a writ of habeas corpus. It is from this order that the appellant seeks relief.

A review of the transcript of the November 22, 1991, hearing before Judge Frazier discloses several relevant facts. First, Ms. Belcher, age 24, admitted that she knew she shouldn't have taken her children, but did anyway. It is clear that once she realized the trouble she was in after taking the children, she attempted to return them. The children were separated from the father for three days. The transcript also shows that Judge Frazier attempted to elicit why the appellant was not given any visitation with the children. The best that he could determine was that she had some trouble with her "nerves," that she had left the children unsupervised several times and they had "gotten out of the yard," and that she had "smoked pot."

The appellant's lawyer argues that the Texas extradition papers are insufficient to permit West Virginia to extradite her to Texas. He points out that the warrant gives no notice of whether the charge is civil or criminal, felony or misdemeanor, and what code section is involved. He also implies that the charged offense is not one recognized by West Virginia; therefore, she should not be extradited.

The Texas indictment states:

In the name and by the Authority of the State of Texas:

THE GRAND JURORS for the County of Potter, State aforesaid, duly organized, impaneled and sworn as such at the JANUARY Term A.D., 1991, of the District Court of the 320th Judicial District, in and for said county, upon their oaths in said Court present that PATRICIA SUE BELCHER hereinafter called defendant, on or about the 8th day of April, 1991 and anterior to the presentment of this indictment, in the County of Potter and State of Texas, did then and there knowingly and intentionally retain Johnny Allen Belcher, Jr. and Jessica Dawn Belcher, children younger than 18 years of age knowing that the retention violated the express terms of a Judgment and Order of the County Court at Law Number 1, Potter County, Texas, disposing of the children's custody, against the peace and dignity of the state.

The Texas extradition request states that "under the laws of this State, Patricia Sue Belcher stands charged with the crime of interference with custody...."

West Virginia Code § 5-1-7 (1990), which deals with extradition of persons charged with crimes in another state, does not require specific findings of what type of crime is involved. The Code section requires that the Governor deliver to the other state "any person charged in that state with *treason, felony, or other crime,* who has fled from justice and is found in this State ... the demand ... [must be] accompanied by an affidavit or sworn evidence that the demand or application is made in good faith for the punishment of crime...." W.Va.Code § 5-1-7(b) (emphasis added). Further, W.Va.Code § 5-1-7(c) requires only that the indictment, information, or affidavit made before the magistrate or justice must substantially charge the person demanded with having committed a crime under the law of that state, and the copy of the indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand. Nothing in W.Va.Code § 5-1-7 requires that there be any greater specificity than what already exists on the extradition form.

However, the appellant argues that she lacked notice of what she was charged with in the indictment because no Texas Code section was listed on the face of the warrant: It "do[es] not state what, if any, law was broken." The Texas Penal Code § 25.-03(a)(1) and (d) (1989) provides that:

A person commits an offense if he takes or retains a child younger than eighteen years when he ... knows that his taking or retention violates the express terms of a judgment or order of a court disposing of the child's custody.... An offense under this section is a felony of the third degree.

It is clear that what is charged is a crime in Texas. A similar statute exists in West Virginia which establishes a felony for concealing or removing a child in violation of a court order. W.Va.Code § 61-2-14d (1984).

In *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948), the United States Supreme Court held that notice of a specific charge and the right to be tried on that charge are necessary to protect a defendant's procedural due process rights. The primary purpose of an indictment is to put the accused on notice of the offense of which he is charged so that he may prepare a defense. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962).

 This Court has examined the question of extradition in *State ex rel. Mitchell v. Allen*, 155 W.Va. 530, 533–534, 185 S.E.2d 355, 358 (1971), *cert. denied*, 406 U.S. 946, 92 S.Ct. 2048, 32 L.Ed.2d 333 (1972). In *Mitchell*, this Court held that:

"In habeas corpus proceedings instituted to determine the validity of custody where petitioners are being held in connection with extradition proceedings, the asylum state is limited to considering whether the extradition papers are in proper form; whether there is a criminal charge pending in the demanding state; whether the petitioner was present in the demanding state at the time the criminal offense was committed; and whether the petitioner is the person named in the extradition papers."

*Id.* at syl. pt. 2.[1]

In this case, the appellant has admitted that she took the children as charged. Thus, there is no question that she was the person named in the extradi-

tion papers and that she was present in the demanding state at the time the criminal offense was committed. It is also clear from the papers that there is a criminal charge pending in Texas. Thus, the final question is whether the extradition papers are in proper form.

Although the inclusion of the text of Texas Penal Code § 25.03(a)(1) & (d) would have improved the clarity of the extradition request, its language is sufficient for the purposes of our extradition statute, the United States Supreme Court decision in *Cole*, and our decision in *Mitchell*. The text of the Texas warrant tracks the Texas statute almost word for word. There is no question that the appellant was on notice of the offense under which she was charged and that it was sufficient to prepare a defense. Consequently, we conclude that the extradition papers are proper.

This is not to say we aren't sympathetic to Ms. Belcher's plight. It appears that she snatched her children on a whim, without thought to the consequences, and now must pay serious reparation by being haled back to Texas. But our decision today reflects additional factors. First, we must uphold the law of a sister state, even if the consequences are repugnant, if the warrant is valid. If we do not enforce Texas law, how could we expect Texas, or any other state, to enforce ours? Secondly, we note that unless Ms. Belcher returns to Texas, it would be unlikely that she would see her children again for a long time, since she could not return to Texas to finalize the divorce or custody proceedings, or for a visit, without being picked up on this outstanding charge.

Accordingly, we affirm the November 22, 1991, order of the Circuit Court of Mercer County and deny the appellant's motion to quash Governor Caperton's extradition order.

Affirmed.

---

1. In *State ex rel. Jones v. McKenzie*, 179 W.Va. 300, 302, 367 S.E.2d 769, 771 (1988), this Court held that the requisition papers from the de-

manding state in an extradition proceeding are the vital instruments in determining the validity of the extradition proceedings.