641 S.E.2d 153

**STATE of West Virginia ex rel. Pamela Jean GAMES–NEELY Petitioner,**

v.

**Honorable David H. SANDERS, Judge of the Circuit Court of Berkeley County, and Jason Eric Vanmetre, Respondents.**

No. 32875.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2006.

Decided Feb. 17, 2006.

Dissenting Opinion of Justice Starcher July 12, 2006.

Concurring Opinion of Justice Maynard July 18, 2006.

Pamela Jean Games–Neely, Prosecuting Attorney, Christopher C. Quasenbarth, Assistant Prosecuting Attorney, Martinsburg, for the Petitioner.

John P. Adams, Public Defender Corporation, Martinsburg, for Respondent Jason Eric VanMetre.

DAVIS, Chief Justice:

In this action in prohibition, petitioner, the Prosecuting Attorney for Berkeley County, seeks to prevent the enforcement of the October 31, 2005, order of the Circuit Court of Berkeley County allowing a defendant, who has been arraigned on criminal charges in West Virginia and released on bail therefor, to waive extradition proceedings and be released to the Commonwealth of Virginia, prior to the conclusion of the criminal proceedings against him in West Virginia. After listening to the oral arguments of the parties, carefully reviewing the legal memoranda of counsel, and considering the pertinent legal authorities, we grant the writ as moulded.

## I.

### FACTUAL AND PROCEDURAL HISTORY

During the October 2005 term of the Circuit Court of Berkeley County, Jason Eric VanMetre (hereinafter referred to as "Mr. VanMetre"), defendant below and one of the respondents herein, was indicted for the felony offense of robbery in the second degree.[1] Mr. VanMetre was arraigned before the circuit court on October 24, 2005. Trial was set for February 15, 2006. Mr. VanMetre was released on bail.[2]

Earlier, on September 8, 2005, Mr. VanMetre had been indicted in the Commonwealth of Virginia for the felony offenses of Grand Larceny and Robbery.[3] These alleged crimes are unrelated to the crime charged in West Virginia.[4] The Commonwealth of Virginia filed a fugitive warrant with respect to the aforementioned indictments. Mr. VanMetre was picked up on the fugitive warrant and placed in the Eastern Regional Jail to await extradition proceedings.[5] Mr. VanMetre indicated his desire to waive extradition proceedings and a hearing on the matter was scheduled in the circuit court for October 31, 2005. At the hearing, the Prosecuting Attorney for Berkeley County (hereinafter referred to as "the Prosecuting Attorney"), the Petitioner in this matter, opposed permitting Mr. VanMetre to waive proceedings related to his extradition to the Commonwealth of Virginia during the pendency of the criminal proceedings against him in West Virginia. The Prosecuting Attorney argued that Mr. VanMetre's speedy trial rights under W. Va.Code § 62–3–21 (1959) (Repl.Vol.2005) would be placed at risk if the State voluntarily relinquished him to another jurisdiction. The Prosecuting Attorney further argued that she should have discretion, under W. Va.Code § 5–1–9(j) (2002) (Repl.Vol.2002),[6] to prevent extradition

---

1. The offense was allegedly committed on or about July 20, 2005. *See State v. VanMetre*, Circuit Court of Berkeley County Case No. 05–F–297.

2. Bail had been set at $30,000.00.

3. *See Commonwealth v. VanMetre*, Frederick County, Virginia, Case Nos.: CR050000725–00 and CR050000726–00.

4. The offenses in Virginia allegedly occurred on July 14 and 22, 2005. In her brief, the Prosecuting Attorney for Berkeley County expressed her belief that the defendant had yet to be arraigned on the Virginia indictments.

5. *See State v. VanMetre*, Berkeley County Magistrate Court Case No.: 05–F–1294. The precise date of Mr. VanMetre's incarceration has not been provided to this Court by the parties to these proceedings. Bail was set at $10,000.00 cash on the fugitive warrant. At the time the instant petition was filed in this Court, the parties stated that Mr. VanMetre had not made bail on the fugitive warrant and remained incarcerated.

6. West Virginia has adopted the Uniform Criminal Extradition Act. *See* W. Va.Code § 5–1–7 through § 5–1–13. W. Va.Code § 5–1–9(j) is part of that Act, and states:

before a defendant has been tried and discharged or convicted and punished in this State. After hearing the parties arguments, the circuit court ruled that Mr. VanMetre would be permitted to waive extradition proceedings on the Virginia charges. The circuit court explained that "if the defendant waives extradition, the State may preserve their [sic] ability to prosecute the defendant by filing a detainer with Virginia and that otherwise the defendant is left accruing 'dead time'[7] in West Virginia's jail on the Virginia fugitive warrant." (Footnote added). However, the circuit court granted the Prosecuting Attorney's request to stay its ruling to allow the instant petition for writ of prohibition to be filed in this Court. We granted a rule to show cause and now grant the writ as moulded.[8]

## II.

## STANDARD FOR WRIT OF PROHIBITION

The instant case is before this Court on a petition for writ of Prohibition.

> If a criminal prosecution has been instituted against the person under the laws of this state and is still pending, the governor, in his or her discretion, either may surrender him or her on demand of the executive authority of another state or hold him or her until he or she has been tried and discharged or convicted and punished in this state: Provided, That any person under recognizance to appear as a witness in any criminal proceeding pending in this state may in the discretion of the governor be surrendered on demand of the executive authority of another state or be held until criminal proceeding pending in this state has been determined: Provided, however, That any person who was in custody upon any execution, or upon process in any suit, at the time of being apprehended for a crime charged to have been committed without the jurisdiction of this state, may not be delivered up without the consent of the plaintiff in an execution or suit, until the amount of the execution has been paid, or until the person shall be otherwise discharged from the execution or process.

7. "Dead time" refers to the fact that Mr. VanMetre would earn no credit for time served while being held on the fugitive warrant. He would receive no credit on the Virginia charges as he was not being held in Virginia. He would receive no credit on the West Virginia charge as he had been released on bail with respect to that charge.

A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va.Code*, 53–1–1.

Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977). The Prosecuting Attorney argues that the circuit court exceeded its legitimate powers by permitting an arraigned criminal defendant awaiting felony trial to waive extradition to a foreign jurisdiction over the State's objection. In this regard, we have held that

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2)

8. On February 6, 2006, the Prosecuting Attorney provided this Court with a copy of a "CONVICTION AND SENTENCE" order entered by the Circuit Court of Berkeley County on January 30, 2006. In that order the circuit court accepted from Mr. VanMetre a plea of guilty to the felony offense of Petit Larceny, 2nd Offense. The guilty plea resulted from an agreement reached between Mr. VanMetre and the Prosecuting Attorney. Pursuant to the agreement, which was accepted by the circuit court, Mr. VanMetre was sentenced to the statutory penalty of one year in the penitentiary. Additionally, Mr. VanMetre was given credit for all time served in jail, including the time during which he was held on the fugitive warrant. This resolution does not prevent us from addressing the issues presented in this case due to the possibility of repetition. *See* Syl. pt. 1, *Israel by Israel v. West Virginia Secondary Schs. Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989) ("Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.").

whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Furthermore,

[i]n determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Syl. pt. 1, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). With these principles in mind, we proceed to address the issues herein raised.

## III.

### DISCUSSION

In this case, the Prosecuting Attorney wishes to try Mr. VanMetre on the charges pending against him in West Virginia prior to his extradition to the Commonwealth of Virginia, while Mr. VanMetre wishes to waive extradition proceedings and voluntarily surrender to Virginia prior to being tried in West Virginia. Whether the state may prevent Mr. VanMetre from waiving extradition has become an issue in this case because Mr. VanMetre has been released on bail with respect to the charges against him in West Virginia. Consequently, if he is permitted to waive extradition proceedings, then once he is released from custody on the fugitive warrant, he may voluntarily turn himself over to Virginia authorities before being tried in relation to the charges against him in West Virginia, assuming there is no condition attached to his bail that restricts his travel. Consequently, in this action in prohibition, the relief sought by the Prosecuting Attorney is two fold. First, the Prosecuting Attorney seeks to keep Mr. VanMetre incarcerated on the fugitive warrant until such time as his West Virginia criminal proceedings have concluded. Next, the Prosecuting Attorney seeks to prevent Mr. VanMetre from voluntarily waiving extradition before he has been tried and acquitted or convicted and punished for the crime he allegedly committed in this State. We address each of these issues in turn.

### A. Extended Incarceration on Fugitive Warrant

Acknowledging that there are statutory time limitations placed on the incarceration of a defendant being held on a fugitive warrant, the Prosecuting Attorney asks this Court to hold that the time limits imposed be suspended pending resolution of the State's charges. Mr. VanMetre argues in response that any attempt to incarcerate him beyond the statutory time limit for a fugitive warrant would violate numerous constitutional rights.[9]

Under W. Va.Code § 5–1–9(f), a person may initially be held on a fugitive warrant for only thirty days.[10] If the governor does not

---

9. Such as a 6th Amendment right to be tried on the Virginia charges, his interest in personal freedom under the fourth and Fifth Amendments, and a right to due process under the Fifth and Fourteenth Amendments.

10. W. Va.Code § 5–1–9(f) states in full:

If from the examination before the judge or magistrate it appears that the person held is the person charged with having committed the crime alleged and, except in cases arising un-

issue a "governor's warrant of arrest"[11] by the expiration of that thirty day period, a judge or magistrate may recommit the person for a further period not to exceed sixty days pursuant to W. Va.Code § 5–1–9(h).[12]

■ The Prosecuting Attorney asks this Court to find that the above described ninety-day time frame is tolled when there are charges pending against a defendant in West Virginia. The Prosecuting Attorney cites numerous cases in support of her request; however, we find none of these cases to be persuasive as they have all concluded that the ninety-day period is tolled *only for periods during which a defendant is being held on other charges.* See Paley v. Bieluch, 785 So.2d 692, 695 (Fla.Dist.Ct.App.2001) ("Petitioner's allegations indicate that for most of the time in question, *he was held on local charges* as well as the fugitive warrant. There is no indication that he has been held in excess of the statutory period *solely on the fugitive warrant.*" (emphasis added)); *In re Lane,* 17 Kan.App.2d 476, 479, 845 P.2d 708, 710 (1992) ("[T]he district court did not err in allowing Lane to be detained for more than 90 days because the filing of the local charges tolled the running of the 90–day period *for so long as he was held on those charges.*" (emphasis added)); *State ex rel. Ehlers v. Endicott,* 188 Wis.2d 57, 66, 523 N.W.2d 189, 193 (1994) ("[T]he thirty-day and optional sixty-day extension periods for detention only pertain to those fugitives who are not already in custody pending other charges or serving other sentences.... *Ehlers was already incarcerated, serving a sentence for the conviction of another crime, and therefore the time limits are inapplica-*

*ble."* (emphasis added) (internal citation omitted)). In this case, Mr. VanMetre is being held only on the fugitive warrant, having posted bail with respect to the criminal charges against him in West Virginia. Thus the ninety-day period is not tolled.

■ Moreover, the time frames set out in W. Va.Code §§ 5–1–9(f) and 5–1–9(h) clearly establish the maximum allowable time a defendant may be held on a fugitive warrant and leave no room for enlargement. For example, W. Va.Code § 5–1–9(f) provides for committing a fugitive to custody "for a time *not exceeding* thirty days ..." (emphasis added). Likewise, the accused may be recommitted to custody under W. Va.Code § 5–1–9(h) "for a further period *not to exceed sixty days ...*" (emphasis added). Under the plain language of these statutes, there is absolutely no authority to hold a defendant on a fugitive warrant for a period that exceeds ninety days.

> " 'Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.' Syl. Pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970)." Syllabus Point 4, *Syncor International Corp. v. Palmer,* 208 W.Va. 658, 542 S.E.2d 479 (2001).

Syl. pt. 4, *Charter Communs. VI, PLLC v. Community Antenna Serv., Inc.,* 211 W.Va. 71, 561 S.E.2d 793 (2002).

Finally, we note that this Court, addressing W. Va.Code § 5–1–9 in a slightly different context, has held that

> "[u]nder the provisions of W. Va.Code, 5–1–9, *a fugitive incarcerated under a fu-*

---

der subdivision (g), section seven [§ 5–1–7] of this article, that he or she has fled from justice, the judge or magistrate must, by a warrant reciting the accusation, commit him or her to the county or regional jail *for a time not exceeding thirty days,* and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused give bail as provided in subdivision (g) of this section, or until he or she shall be legally discharged.

(Emphasis added).

**11.** For a definition of this term, see W. Va.Code § 5–1–8 (1937) (Repl.Vol.2002), titled "Governor's warrant of arrest."

**12.** W. Va.Code § 5–1–9(h) states in full:

If the accused is not arrested under warrant of the governor by the expiration of the time specified in the warrant or bond, a judge or magistrate may discharge him or her or may recommit him or her for a further period *not to exceed sixty days,* or a judge or magistrate may again take bail for his or her appearance and surrender as provided in subdivision (g) of this section, but within a period not to exceed sixty days after the date of the new bond.

(Emphasis added).

*gitive warrant in this State is entitled to release from custody after ninety days unless the Governor's extradition warrant has been issued and executed.* However, upon his release such person remains a fugitive subject to rearrest on the Governor's warrant if he remains within this State." Syllabus, *Brightman v. Withrow,* 172 W.Va. 235, 304 S.E.2d 688 (1983).

Syl. pt. 1, *State ex rel. Moore v. Conrad,* 179 W.Va. 577, 371 S.E.2d 74 (1988) (emphasis added). Other jurisdictions that have adopted the Uniform Extradition Act[13] have similarly concluded and/or observed that, under the Act, ninety days is the maximum amount of time a defendant may be held on a fugitive warrant. *See, e.g., Orton v. State* 481 So.2d 236, 237 (Fla.Dist.Ct.App.1983) (explaining that "[o]ur study leads us to the conclusion that the statute merely requires discharge of the accused from custody or bond after the expiration of the [aggregate ninety-day] statutory time period."); *State v. Holliman,* 247 Mont. 365, 366, 805 P.2d 52, 52 (Mont.1991) (recognizing prior holding stating, in part, that "time limits in section 46–30–302 and –304 refer ... to the length of detention permitted before an accused person *must* be released from custody in the asylum state." (emphasis added) (citation omitted)); *Bell v. Janing,* 188 Neb. 690, 691 & 692, 199 N.W.2d 24, 24 & 25 (1972) (finding that "[u]nder sections 29—743 and 29—745, R.R.S. 1943, of the Uniform Criminal Extradition Act, the appellant became entitled to release from custody on August 21, 1971, the date on which 90 days had elapsed which is the limit of legal detention under the statute[,]" and further commenting that "[i]t is clear that the cited sections of the Uniform Criminal Extradition Act are to prevent an unreasonable lengthy period of confinement of fugitives pending consummation of extradition proceedings by the demanding state. It is clear that they are entitled to the writ of habeas corpus to enforce the provisions of these sections of the statute."); *People ex rel. Brandolino v. Hastings,* 72 A.D.2d 821, 821, 421 N.Y.S.2d 893, 894 (1979) (stating that "CPL 570.36 and 570.40 are primarily de-

signed to insure that an accused is not indefinitely detained in the absence of State action toward extradition. Thus, an accused who has not been arrested pursuant to a Governor's warrant within 90 days of his detention, may demand to be released. However, CPL 570.36 and CPL 570.40 do not immunize the accused from extradition ...." (citations omitted)); *Carter v. State,* 708 P.2d 1097, 1100 (Okla.1985) ("The Florida Court of Appeals, in construing the Uniform Criminal Extradition Act as adopted in that state, interpreted the thirty and sixty day provisions contained in our sections 1141.15 and 1141.17 *to require that the accused be discharged from custody or bond upon the expiration of the 90 day period, if at the end of that time the accused has not been arrested on the Governor's warrant.* We believe the Florida interpretation is correct and applicable to the law as adopted in Oklahoma." (emphasis added) (footnotes omitted)); *Commonwealth ex rel. Coffman v. Aytch,* 238 Pa.Super. 584, 587, 361 A.2d 652, 654 (1976) (explaining that "the production of a Governor's Warrant was required within a maximum of 90 days of November 20, 1973, the date the Illinois detainer was lodged, and there was no authority to hold appellant beyond the following 90 day period." (internal citations omitted)); *In re James H. Hval,* 148 Vt. 544, 549, 537 A.2d 135, 139 (1987) (commenting that "[a]lmost all states in the country, including the three states involved in this case, have adopted the Uniform Criminal Extradition Act with its provision that 90 days is a reasonable limit to hold a person while awaiting a Governor's warrant. When the policies among states are identical, we must be careful that the act of crossing a state boundary does not create different rights, undermining the expressed policies of all the states."); *State ex rel. Lykins v. Steinhorst,* 197 Wis.2d 875, 889, 541 N.W.2d 234, 240 (Wis.Ct.App.1995) (observing that "[u]nder other provisions of the Uniform Criminal Extradition Act, the asylum state may make a custodial arrest, and the individual may be maintained in custody by court order *for up*

---

**13.** West Virginia has adopted the Uniform Criminal Extradition Act. *See* W. Va.Code § 5–1–7 through § 5–1–13.

*to ninety days* to allow fo@r service of the governor's warrant. Section 976.03(13), (14), (15) and (17).").

Based upon the foregoing, we hold that a defendant incarcerated under a fugitive warrant in this State may not be held solely on that warrant for a period exceeding the aggregate of ninety days as provided for under W. Va.Code §§ 5-1-9(f) and (h) (2002) (Repl. Vol.2002). Having determined that the Prosecuting Attorney cannot seek to hold Mr. VanMetre on the fugitive warrant beyond the period of ninety days, we will now consider whether the Prosecuting Attorney may prevent Mr. VanMetre from waiving extradition proceedings.

### B. Preventing Voluntary Waiver of Extradition Proceedings Pending Conclusion of State Criminal Proceedings

█ The Prosecuting Attorney points out that where a demand for extradition has been made by the executive authority of another state, the Uniform Extradition Act, W. Va.Code § 5-1-7 through 13, authorizes the Governor of West Virginia to refuse extradition when criminal proceedings have been instituted against a defendant in West Virginia. *See* W. Va.Code § 5-1-9(j).[14] The Prosecuting Attorney contends that she, likewise, should be able to prevent a defendant who has been arraigned on charges in West Virginia from waiving extradition prior to the conclusion of criminal proceedings in West Virginia.

Mr. VanMetre responds that, because the Governor of Virginia has made no demand for his extradition, the Extradition Act has not been invoked and the Prosecuting Attorney may not rely on its provisions. Thus, W. Va.Code § 5-1-9(j) is not applicable and does not grant to the Prosecuting Attorney any authority to prevent Mr. VanMetre from waiving extradition proceedings. Mr. Van-Metre argues further that, should this Court find that the Extradition Act is somehow

applicable, then W. Va.Code § 5-1-9(j) still fails to lend aid to the Prosecuting Attorney as it grants authority to the *governor* and not to a prosecuting attorney.

We begin our analysis of the question of whether the Prosecuting Attorney may prevent Mr. VanMetre from waiving extradition under the circumstances presented in this case by examining the statute upon which the Prosecuting Attorney seeks to rely. W. Va. Code § 5-1-9(j) states, in relevant part,

> [i]f a criminal prosecution has been instituted against the person under the laws of this state and is still pending, *the governor*, in his or her discretion, either may surrender him or her on demand of the executive authority of another state or hold him or her until he or she has been tried and discharged or convicted and punished in this state....

(Emphasis added).[15] The foregoing provision of W. Va.Code § 5-1-9(j) plainly grants authority solely to the *governor* to either surrender or hold a criminal defendant who has been demanded by the executive authority of another state. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959). In this case, however, Mr. VanMetre seeks to waive extradition proceedings before a demand by the executive authority of another state has been made. Therefore, W. Va.Code § 5-1-9(j) is not triggered. The Prosecuting Attorney suggests that, under these circumstances, prosecuting attorneys should nevertheless be permitted to rely on this section of the West Virginia Code to prevent a defendant from waiving extradition prior to the conclusion of criminal proceedings on the charges against him or her in West Virginia.[16] We find no

---

14. See *supra* note 7 for full text of W. Va.Code § 5-1-9(j).

15. See *supra* note 7 for full text of W. Va.Code § 5-1-9(j).

16. The Prosecuting Attorney argues that by allowing such a defendant to leave this state after

he or she has been arraigned jeopardizes the State's ability to conform with the rule that a criminal defendant be tried within three terms of court. *See* Syllabus, *State v. Carter*, 204 W.Va. 491, 513 S.E.2d 718 (1998) ("Pursuant to W. Va.Code § 62-3-21 (1959), when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction, if

support for granting such authority in W. Va.Code § 5–1–9(j), particularly insofar as W. Va.Code § 5–1–9(j) specifically grants authority only to the governor. There is, however, another statute that does address the instant question.

W. Va.Code § 5–1–11 (1999) (Repl.Vol. 2002) expressly addresses the waiver of extradition proceedings. Specifically, W. Va. Code § 5–1–11(b) directs that

> [a]ny person arrested in this state charged with having committed any crime

three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute."). We are unpersuaded by this argument. This Court's opinion in *State ex rel. Stines v. Locke*, 159 W.Va. 292, 220 S.E.2d 443 (1975), makes clear that the state will not be charged under the three-term rule for terms of court for which a defendant is incarcerated in another state so long as the state seeks custody of the defendant pursuant to Article IV of the Agreement on Detainers, found at W. Va.Code § 62–14–1 *et seq.* In this respect, the *Stines* Court explained:

> The state has been given the means by which it can fulfill its constitutional obligation of affording an accused a speedy trial by the provisions of Article IV of *W. Va.Code*, 62–14–1, as amended. It is therein provided that the appropriate officer of the jurisdiction in which an untried indictment is pending may apply to the state in which the one under said indictment is incarcerated for the purpose of obtaining temporary custody of him. It is anticipated that during said temporary custody the prisoner will be tried or the indictment will be otherwise disposed of. The governor of the state in which the prisoner is incarcerated may, within thirty days of the request for temporary custody, refuse such request.
>
> . . . .
>
> . . . Had the prosecuting authorities of Raleigh County requested and were refused custody of the accused under Article IV of W. Va.Code, 1931, 62–14–1, as amended, then the state would be excused and those terms of court would not be chargeable under the provisions of W. Va.Code, 1931, 62–3–21, as amended.

159 W.Va. at 295–96, 220 S.E.2d at 446.

17. W. Va.Code § 5–1–11(b) states in full:

Any person arrested in this state charged with having committed any crime in another state or alleged to have escaped from confinement, or broken the terms of his bail, probation or parole may waive the issuance and service of the warrant provided for in subsections (a) and (d), section eight [§ 5–1–8(a) and (d)] of this article, and all other procedure

in another state or alleged to have escaped from confinement, or broken the terms of his bail, probation or parole *may waive* the issuance and service of the warrant provided for in subsections (a) and (d), section eight [§ 5–1–8(a) and (d)] of this article, and all other procedure incidental to extradition . . . .

(Emphasis added).[17] The statute goes on to describe the procedure for accepting a waiver and then states

> incidental to extradition proceedings, by executing or subscribing in the presence of a judge of any court of record, within this state a writing which states that he consents to return to the demanding state: Provided, That before such waiver shall be executed or subscribed by such person it shall be the duty of such judge to inform such person of his rights with respect to the issuance and service of a warrant of extradition and with respect to obtaining a writ of habeas corpus as provided for in subsection (a), section nine [§ 5–1–9(a)] of this article.
>
> If and when such consent has been duly executed it shall forthwith be forwarded to the office of the governor of this state and be filed by him in the office of the secretary of state. The judge shall direct the officer having such person in custody to deliver forthwith such person to the duly accredited agent or agents of the demanding state, and shall deliver or cause to be delivered to such agent or agents a copy of such consent: Provided, That nothing in this subdivision shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state, nor shall this waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights, or duties of the officers of the demanding state or of this state.

The foregoing provision makes reference to W. Va.Code §§ 5–1–8(a) and (d) (1937) (Repl.Vol. 2002), which provisions relate to a "governor's warrant of arrest." W. Va.Code § 5–1–8(a) states:

> If the governor decides that the demand should be complied with, he shall sign a warrant of arrest which shall be sealed by the secretary of state with the great seal of this state, and be directed by the governor to any peace officer or other person whom he may think fit to entrust with the execution thereof. The warrant must substantially recite the facts necessary to the validity of its issuance.

W. Va.Code § 5–1–8(d) states that "[e]very such peace officer or other person empowered to make the arrest, shall have the same authority, in arresting the accused, to command assistance therein, as peace officers have by law in the execution of any criminal process directed to

Provided, That *nothing in this subdivision shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state,* nor shall this waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights, or duties of the officers of the demanding state or of this state.

(Emphasis added). Thus, the statute makes clear that the Legislature's intent is to allow individuals subject to the extradition process to waive that process, and furthermore, to not limit their right to voluntarily submit to extradition to a demanding state. This would appear to resolve the instant case in Mr. VanMetre's favor. However, this provision of the statute does not address waiver by an individual who has been charged with committing a crime in West Virginia. To see what the Legislature has to say about extradition in the context of a person who is charged with committing a crime in West Virginia, we look to another provision of the statute, namely W. Va.Code § 5–1–11(d).

Unlike W. Va.Code § 5–1–11(b), W. Va. Code § 5–1–11(d) expressly addresses the impact of extradition when a defendant has been accused of committing a crime in West Virginia. In this respect, the Legislature has stated

(d) *Nothing in this article contained shall be deemed to constitute a waiver by this state of its right, power or privilege to try such demanded person for an offense committed within this state,* or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any offense committed within this state, nor shall any proceedings had under this article which result in, or fail to result in, extradition, be deemed a waiver by this state of any of its rights, privileges or jurisdiction in any way whatsoever.

W. Va.Code § 5–1–11(d) (emphasis added). As previously noted, "[w]hen a statute is clear and unambiguous and the legislative

intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353. The language of W. Va.Code § 5–1–11(d) plainly expresses the intent of the Legislature that a waiver of extradition proceedings shall not deprive the State of West Virginia of its "right, power or privilege to try [a] demanded person for an offense committed within this state[.]" The fact that the statute goes on to utilize the disjunctive "or" and then offer the alternative of regaining custody of a demanded person "for the purpose of trial, sentence or punishment," clearly demonstrates that the former portion of the statute refers to trying a demanded person before he or she is permitted to leave the state. "We have customarily stated that where the disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects." *State v. Rummer,* 189 W.Va. 369, 377, 432 S.E.2d 39, 47 (1993) (internal quotations and citations omitted).

■ We next consider who is the proper official to protect the State's interests where a West Virginia criminal defendant seeks to waive extradition proceedings. We are aware that extradition is generally a function of the executive office of the governor. *See* 1 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I–190 (2d ed 2002) ("Since the right to demand extradition and the correlative duty to extradite rest solely with the executives of the demanding and asylum states, judicial intervention is limited."). *See also State ex rel. Drescher v. Hedrick,* 180 W.Va. 35, 38, 375 S.E.2d 213, 216 (1988) ("Since the right to demand extradition and the correlative duty to extradite rest solely with the executives of the demanding and asylum states, judicial intervention is limited. *Drew v. Thaw,* 235 U.S. 432, 35 S.Ct. 137, 59 L.Ed. 302 (1914); *Munsey v. Clough,* 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515 (1905).").[18] However, it is important to

---

them, with like penalties against those who refuse their assistance."

**18.** This Court has further explained that

[t]his Court acknowledged the traditionally limited role of the judiciary in extradition matters in syllabus point 1 of *State ex rel. Gonzales v. Wilt,* 163 W.Va. 270, 256 S.E.2d 15 (1979):

note at this juncture that a prosecuting attorney is an officer of the executive branch of government. *See, e.g., State ex rel. Ginsberg v. Naum,* 173 W.Va. 510, 512, 318 S.E.2d 454, 456 (1984) ("a prosecutor, *as part of the executive department,* must enforce ... criminal laws." (emphasis added) (citing *State ex rel. Hamstead v. Dostert,* 173 W.Va. 133, 313 S.E.2d 409 (1984))); Syl. pt. 7, *State ex rel. Skinner v. Dostert,* 166 W.Va. 743, 278 S.E.2d 624 (1981) ("The prosecutor, *like any other executive officer,* must have sound reasons for his actions." (emphasis added)); *State ex rel. Miller v. Smith,* 168 W.Va. 745, 755–56, 285 S.E.2d 500, 506 (1981) ("Prosecuting attorneys are executive officers, *see* W. Va. Const. art. VII, § 1; *Code* 5–3–2 (1979 Replacement Vol.), § 7–4–1, . . . ."(footnote omitted)). Thus, the fact that the governor and prosecuting attorneys are both executive officers of the state is important in the context of our extradition statutes.

■ Although W. Va.Code § 5–1–9(j) grants authority only to the *governor,* W. Va.Code § 5–1–11(b) prohibits a waiver of extradition proceedings from limiting the powers, rights or duties of *"officers ... of this state."* The reference to "officers ... of this state" undoubtedly refers to a broader range of officials than merely the governor, and would include prosecuting attorneys. As an officer of this state, a prosecuting attorney possesses both the right and duty to prosecute persons suspected of committing crimes. In this respect, this Court has de-

"In habeas corpus proceedings instituted to determine the validity of custody where petitioners are being held in connection with extradition proceedings, the asylum state is limited to considering whether the extradition papers are in proper form; whether there is a criminal charge pending in the demanding state; whether the petitioner was present in the demanding state at the time the criminal offense was committed; and whether the petitioner is the person named in the extradition papers." Point 2, Syllabus, *State ex rel. Mitchell v. Allen,* 155 W.Va. 530, 185 S.E.2d 355 (1971).
*State ex rel. Drescher v. Hedrick,* 180 W.Va. 35, 38, 375 S.E.2d 213, 216 (1988). *Accord* Syl. pt. 1, *In re Extradition of Chandler,* 207 W.Va. 520, 534 S.E.2d 385 (2000); Syl. pt. 2, *State ex rel. Nelson v. Grimmett,* 199 W.Va. 604, 486 S.E.2d 588 (1997); Syl. pt. 1, *State ex rel. Coryell v. Gooden,* 193 W.Va. 461, 457 S.E.2d 138 (1995); Syl., *State v. Belcher,* 188 W.Va. 73, 422 S.E.2d

clared that "[t]he prosecuting attorney is the constitutional officer charged with the responsibility of instituting prosecutions and securing convictions on behalf of the State of those who violate the criminal law. W. Va. Const. art. 9,[19] § 1; W. Va.Code § 7–4–1 [ (1971) (Repl.Vol.2003) ] [20]" *State ex rel. Skinner v. Dostert,* 166 W.Va. 743, 750, 278 S.E.2d 624, 630 (footnotes added). This Court has also elaborated that

"[a]s criminal offenses are offenses against the State which must be prosecuted in the name of the State ... the prosecutor, *as the officer charged with prosecuting such offenses, has a duty to vindicate the victim's and the public's constitutional right of redress for a criminal invasion of rights.* The 'spirit of the law' has long been and it has been long held that 'the public has rights as well as the accused, and one of the first of these is that of redressing or punishing their wrongs.' (Citation omitted)."

*Manning v. Inge,* 169 W.Va. 430, 436, 288 S.E.2d 178, 182 (1982) (emphasis added) (quoting *State ex rel. Skinner v. Dostert* ). Accordingly, we believe that, as an officer of the executive branch, a prosecuting attorney is the proper official to ensure that an individual's waiver of extradition proceedings does not obstruct the State's "right, power or privilege to try" the individual. W. Va.Code § 5–1–11(d). Under the provisions of this statute, then, a defendant's right to waive

640 (1992); Syl. pt. 1, *State ex rel. Mikulik v. Fields,* 186 W.Va. 78, 410 S.E.2d 717 (1991).

**19.** W. Va. Const. art. IX § 1 states: "[t]he voters of each county shall elect a surveyor of lands, a prosecuting attorney, a sheriff, and one and not more than two assessors, who shall hold their respective offices for the term of four years."

**20.** W. Va.Code § 7–4–1 (1971) (Repl.Vol.2003), states in relevant part:

It shall be the duty of the prosecuting attorney to attend to the criminal business of the State in the county in which he is elected and qualified, and when he has information of the violation of any penal law committed within such county, he shall institute and prosecute all necessary and proper proceedings against the offender, and may in such case issue or cause to be issued a summons for any witness he may deem material. . . .

extradition simply may not limit a prosecuting attorney's right and duty to conduct prosecutions against persons suspected of committing crimes within the State of West Virginia.

Finally, we note that the State has a strong interest in prosecuting individuals who have been accused of committing crimes within its borders prior to allowing them to submit to extradition, and the decision of whether such a defendant may be extradited prior to prosecution in this State should not be left up to the defendant. As the Prosecuting Attorney points out, "[t]he question of priority of jurisdiction is one of comity between the respective sovereignties and not one of personal right of the prisoner." *Davis v. Rhyne*, 181 Kan. 443, 448, 312 P.2d 626, 631 (1957). Though discussing the powers of the governor to refuse a demand for extradition, a New York court long ago wisely reasoned that:

> [i]f [a defendant] has committed offenses against the laws of two states, it is not for him [or her] to choose in which state he [or she] shall be held to answer. Naturally he [or she] would always choose that in which the punishment would be the lighter, or the chances of conviction the least.... In the very nature of things, it is desirable that the power should rest somewhere in the state to refuse to give up a prisoner until he has satisfied the claims of the state against him, or to waive the enforcement of those claims, and surrender him to another state for the satisfaction of its laws. If such power did not exist, a criminal might easily evade or postpone his just punishment for the gravest of crimes committed in one state by the commission of a crime of much less magnitude in another.

*People ex rel. Gallagher v. Hagan*, 34 Misc. 85, 87, 69 N.Y.S. 475, 477 (1901).

As the foregoing discussion demonstrates, the Legislature has clearly expressed its intention that, in general, criminal defendants have an unrestricted right to waive extradition proceedings. Nevertheless, the Legislature has also plainly stated that such a waiver shall not surpass the power, rights or duties of the officers of this state, and shall not constitute a waiver of the State's power or privilege to try the demanded person for crimes committed within this State. Accordingly, we now hold that when a person who has been charged with committing a crime within the State of West Virginia is arrested in this State on a fugitive warrant for crime(s) committed in another state, he or she may waive extradition proceedings. However, upon the election of a county prosecuting attorney to prosecute the defendant for a pending charge in this State prior to his or her extradition to such other jurisdiction, the defendant's waiver of extradition proceedings shall be unenforceable until such time as the defendant has been timely tried and either acquitted or convicted and punished in this state.

## IV.

### CONCLUSION

Based upon our discussion of the issues raised in connection with the instant petition for writ of prohibition, we conclude that a defendant incarcerated under a fugitive warrant in this State may not be held on that warrant for a period exceeding the aggregate of ninety days as provided for under W. Va.Code §§ 5–1–9(f) and (h). We further conclude that a prosecuting attorney may not prevent a person from waiving extradition. When a person who has been charged with committing a crime within the State of West Virginia is arrested in this State on a fugitive warrant for crime(s) committed in another state, he or she may waive extradition proceedings. However, upon the election of a county prosecuting attorney to prosecute the defendant for a pending charge in this State prior to his or her extradition to such other jurisdiction, the defendant's waiver of extradition proceedings shall be unenforceable until such time as the defendant has been tried and either acquitted or convicted and punished in this state. Based upon these conclusions, we grant the requested writ of prohibition as moulded.

Writ granted as moulded.

STARCHER, J., dissenting:

(Filed July 12, 2006)

This case is about a West Virginia prosecuting attorney who seeks to stop the en-

forcement of a statutorily-mandated circuit court order for the extradition of a defendant from West Virginia to Virginia. The defendant was charged with criminal conduct in both Virginia and West Virginia, but had been admitted to bail only on the West Virginia charges. The defendant was being held in a West Virginia jail in default of bond on a fugitive warrant based on the Virginia charges.

I disagree with the majority for several reasons.

First, the majority allows a prosecuting attorney to trump a valid order of a circuit court which was mandated by our extradition statute. In my opinion, allowing a decision of a prosecuting attorney to trump a circuit court order is contrary to our historical jurisprudence. I am also of the opinion that such practice is in no way suggested by the language of the *Uniform Criminal Extradition Act* ("the Act").

Second, I believe the statute relied upon by the majority was not intended to vest in the prosecuting attorney the power, acting alone, to decide questions relating to waiver of extradition. Historically, the statute was intended to prevent the act of extradition from constituting a waiver of jurisdiction or pardoning of the defendant by the asylum state.

Third, I believe that the majority opinion renders a portion of our statute meaningless, thereby violating one of the most basic principles of statutory construction—that the Legislature will not enact a meaningless statute.

Finally, the majority decision may lead to absurd results in other factual scenarios, thereby violating another rule of statutory construction.

To better understand my four objections, let us first look at the statute that was misconstrued by the majority opinion. *W.Va.Code*, 5–1–11 [1999] states, in relevant part, as follows:

(b) Any person arrested in this state charged with having committed any crime in another state ... may waive the issuance and service of the ... [governor's warrant of arrest] ... by executing or subscribing in the presence of a judge ... a writing which states that he consents to return to the demanding state: Provided, That before such waiver shall be executed or subscribed by such person it shall be the duty of such judge to inform such person of his rights....

. . .

If and when such consent has been duly executed it *shall* forthwith be forwarded to the office of the governor.... The judge *shall* direct the officer having such person in custody to deliver forthwith such person to the ... demanding state ... Provided, That nothing in this subdivision shall be deemed ... to limit the powers, rights, or duties of the officers ... of this state.

. . .

(d) Nothing in this article contained shall be deemed to constitute a waiver by this state of its right, power or privilege to try such demanded person for an offense committed within this state, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any offense committed within this state, nor shall any proceedings had under this article which result in, or fail to result in, extradition, be deemed a waiver by this state of any rights, privileges or jurisdiction in any way whatsoever.

(Emphasis added.)

The underpinnings of our law relating to extradition are found in the Art. IV, § 2 of the *United States Constitution*, which states, in part:

A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime....

In 1793 Congress enacted statutes to provide the machinery for execution of this constitutional provision. However, since the federal law did not cover every conceivable

scenario which could arise in the context of extradition, the states were left free to enact laws not inconsistent with the *United States Constitution* and the federal law.

Because, over the years various states had developed different laws relating to extradition, a Uniform Criminal Extradition Act was promoted and eventually enacted in some form by most states.[1] West Virginia enacted the Act in 1937, and the Legislature from time-to-time has amended the Act.[2] Presently, fifty-one states and territories of the United States have adopted some form of the Act.[3]

The Act was promoted to remove some of the impediments in extradition proceedings. Prior to the adoption of the Act, in some states extradition operated as a *waiver of jurisdiction* by the asylum state. An example of this principle prior to the Act is found in *In Re Whittington,* 34 Cal.App. 344, 167 P. 404 (1917). In *Whittington,* the petitioner was arrested in Texas for a crime committed in Texas. Texas subsequently honored a requisition from the governor of California for custody of the petitioner to answer to a charge of murder in California. After being taken to California, the California murder case was dismissed. Texas then sought the return of the petitioner to answer the charges pending in Texas. The petitioner resisted being returned to Texas, and the question presented to the California court was whether the petitioner had "fled from justice" so as to fall within the provisions of *U.S. Constitution,* Art. IV, § 2—thereby subject to being returned to Texas. The California court held that because the petitioner did not voluntarily leave the state of Texas, he could not be considered a "fugitive from justice." Therefore, since there was no authority for Texas to regain custody, Texas, in releasing the petitioner to California, was deemed to have *waived jurisdiction* to its right to have the petitioner returned to Texas.[4]

Also, prior to the Act, in some jurisdictions extradition was considered as constituting a *pardon,* or surrender of jurisdiction, by the asylum state. *See Ex parte Guy,* 41 Okla. Crim. 1, 269 P. 782 (1928). In *Guy,* the petitioner was tried, convicted and sentenced on a drug offense in Oklahoma. The Oklahoma governor released the petitioner to federal authorities. The release order specifically reserved to Oklahoma the right to have the petitioner brought back to Oklahoma to serve the remainder of his Oklahoma sentence. The federal authorities tried, convicted and sentenced the petitioner. When the Oklahoma authorities attempted to have the petitioner returned to Oklahoma, the action was challenged. The Oklahoma court held that Oklahoma's releasing the prisoner to the federal authorities was, in effect, a *pardon* exercised pursuant to Oklahoma's constitution, despite the conditions in the order for his return.

It was problems created by *waiver of jurisdiction* and *pardon* principles, as well as other differences between states, that eventually led to the drafting and ultimate passage of the Act by most states.

It is clear that the portion of the Act found in *W.Va.Code,* 5-1-11(d) was designed to prevent the waiver of jurisdiction and the pardon principles from adversely affecting an asylum state's right, power or privilege to try the demanded person for an offense committed in the asylum state. I find nothing that suggests, as the majority holds, historical or otherwise, that the language of this statute

1. The revised Uniform Criminal Extradition Act was approved by the National Conference of Commissioners on Uniform State Laws, and the American Bar Association, in 1936. It was derived from a prior Uniform Criminal Extradition Act. The revised 1936 Act has since been superseded by the Uniform Extradition and Rendition Act (1980) which was proposed by the National Conference of Commissioners of Uniform State Laws. However, only North Dakota to date has enacted the 1980 version. Volume 11, *Uniform Laws Annotated,* Criminal Law and Procedure, Appendix I, page 291.

2. *See W.Va.Code,* 5-1-7 though 5-1-13 [1999].

3. *See* Report of the National Conference of Commissioners on Uniform State Laws, current through 2004 annual meeting. 11 U.L.A.Crim. Law and Proc. (Master ed., cum. annual pocket part 1908).

4. *See also People ex rel. Barrett v. Bartley,* 383 Ill. 437, 50 N.E.2d 517 (1943).

was designed to give a prosecuting attorney the sole and ultimate authority in deciding whether or not a waiver of extradition would result in the person being turned over to the authorities of a demanding state. *W. Va. Code*, 5–1–11(d) should be read and applied as preserving the state's right to proceed with the prosecution of a defendant after he has been extradited to a demanding state and later returned to an asylum state.

The majority opinion correctly cites to the following principle of statutory construction in Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959):

> When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.

The majority, however, does not consider corollary principles of statutory construction which I believe also apply to this case. In Syllabus Point 5, *Fruehauf v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975), we stated:

> Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

We also have said that "[i]n construing a statute, significance and effect must, if possible, be given to every section, clause, word, or part of the statute." *See State v. General Daniel Morgan Post No. 548, V.F.W., supra.* The majority opinion either failed to consider or ignored these principles of statutory construction.

By failing to apply these principles, the majority ignores completely the second paragraph of *W.Va.Code*, 5–1–11(b) which reads, in part, as follows:

> If and when such consent [waiver] has been duly executed it *shall* forthwith be forwarded to the office of the governor of this state and be filed by him in the office of the secretary of state. *The judge shall direct the officer having such person in custody to deliver forthwith such person to the duly accredited agent or agents of the demanding state,* and shall deliver or cause to be delivered to such agent or agents a copy of such consent. . . .

(Emphasis added.)

Our Court has also said: "It is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus Point 4, *State of West Virginia ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, V.F.W.*, 147 W.Va. 645, 129 S.E.2d 921 (1963). *See also* 73 Am.Jur.2d *Statutes* 172. The Legislature clearly stated in *W.Va.Code*, 5–1–11(b), *supra*, that a copy of a waiver of extradition "shall forthwith be forwarded to the office of the governor." The governor has the right under the statute to refuse to surrender a person who is requisitioned by the authorities in a demanding state.[5] Given the presumption that the Legislature will not enact a meaningless or useless act, it is clear that these provisions should be construed as giving *the governor, not the prosecuting attorney,* the opportunity to refuse extradition where a waiver is involved. The majority opinion, contrary to *Hardesty v. Aracoma–Chief Logan, supra,* would render these provisions of the act requiring the forwarding of the waiver to the governor a meaningless act.

Equally disturbing, and perhaps more so, is that under the majority's opinion, a circuit judge order issued pursuant to the mandato-

5. *See W.Va.Code*, 5–1–9(j) (2002).

> If a criminal prosecution has been instituted against the person under the laws of this state and is still pending, the governor, in his or her discretion, either may surrender him or her on demand of the executive authority of another state or hold him or her until he or she has been tried and discharged or convicted and punished in this state . . .

*See also W.Va.Code*, 5–1–11(f), which states:

> Nothing in this section shall be construed to limit the authority of the governor, at his or her own instance, to refuse to honor an extradition demand from another jurisdiction.

ry language of *W.Va.Code*, 5–1–11(b) is now subservient to the wishes of the prosecuting attorney. Surely the drafters of the *Uniform Criminal Extradition Act* never intended such a result.

Finally, I dissent from the majority opinion because permitting a prosecuting attorney to trump a statutorily-mandated order of a circuit judge may lead to absurd results in some cases. We said in Syllabus Point 2 of *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938):

> Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce an absurdity, will be made.

Suppose that a person is charged with a misdemeanor property crime in this state. Suppose further that the same person is charged with a more serious offense—say murder, kidnaping, sexual assault of a minor, or aggravated robbery—in a demanding state. Suppose also that witnesses in the case in the demanding state were elderly or sick with terminal illness. Finally, assume that the prosecuting attorney in this state insisted, as the majority opinion would allow, upon first trying the misdemeanor property crime before allowing the person to be extradited. Under such circumstances, the person could escape conviction in the demanding state if critical evidence became unavailable on the more serious offense due to the unreasonable position of our state's prosecuting attorney.

Continuing with the same example, suppose the governor was contacted as the statute requires, and suppose that the governor expressly consented to the extradition upon waiver of extradition by the defendant. The majority decision suggests that the demand by the prosecuting attorney would not only trump the mandatory order of the circuit court providing for extradition upon waiver, but also would trump the express consent of the governor. The drafters of the Act never envisioned such results.

A more reasonable construction of the statute would be to require the circuit court, absent intervention by the governor, to resolve any disagreements between the prosecuting authorities in this state and a demanding state.

The latest Uniform Extradition and Rendition Act[6] was approved by the National Conference of Commissioners on Uniform State Laws in 1980. The commentary to the new Act suggests that disputes may arise between the prosecuting authorities of demanding and asylum states. In discussing the circumstances, such as the instant case, the commentary states that "presumably the prosecutors of the asylum and demanding states would then discuss which warrant would proceed first." The comment does not, however, say how to resolve a dispute in the event that the prosecutors cannot agree.

The most rational approach, and the one most consistent with our jurisprudence, is when a prosecuting attorney of the asylum state and a prosecuting attorney of the demanding state cannot agree on a decision as to whether or not to extradite, absent intervention by the governor, our circuit judges should make the final determination. Such decisions by circuit judges would serve as little more than docket management decisions, which are made every day by circuit judges. Clearly, in this case the circuit judge was aware that when the Virginia case was completed, the local prosecuting attorney could regain custody of the defendant under *W.Va.Code*, 5–1–11 (1999) and try the defendant in West Virginia. It should be the circuit judge's call—not the prosecuting attorney's call—as to whether or not the defendant should be released to a demanding state.

West Virginia has highly-qualified general jurisdiction judges. Our circuit judges are quite capable of serving as intermediaries between the prosecuting officials of our state and a demanding state in the extradition waiver process. Resolving disputes is what our circuit judges do.

Finally, what has happened in this case is exacerbated by the fact that the fugitive was already admitted to bail on the West Virginia charges. The effect of the majority decision is to allow a West Virginia prosecuting attorney to hold a defendant in a West Virginia

---

**6.** To date adopted only in North Dakota, *see* n. 1.

jail for a crime allegedly committed in another state, even though he has made bond on his West Virginia crime. Sadly, this is likely the result that our state prosecuting attorney wanted, if for no other reason than to pressure the defendant into a plea.

Respectfully, I dissent.

MAYNARD, Justice, concurring:

(Filed July 18, 2006)

I concur to the majority opinion because I believe that it properly construes W.Va.Code § 5–1–11(d), the applicable statute in this case, and reaches a common sense result.

The dissenting opinion asserts that W.Va. Code § 5–1–11(d) should be read and applied as preserving this State's right to proceed with the prosecution of a defendant *after* he or she has been extradited to a demanding state and later returned to the asylum state. The problem with this construction is that it does not accord with the plain language of the statute. According to W.Va.Code § 5–1–11(d), in part,

> Nothing in this article contained shall be deemed to constitute a waiver by this state of its right, power or privilege to try such demanded person for an offense committed within this state, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any offense committed within this state[.]

As noted in the majority opinion, while *one* purpose of this statute is intended to do what the dissenting opinion indicates, to regain custody of a defendant after extradition, the disjunctive "or" prior to offering the remedy of regaining custody of a defendant "clearly demonstrates that the former portion of the statute refers to trying a demanded person

before he or she is permitted to leave the state." The dissenting opinion would have this Court completely disregard the first portion of the statute in clear contravention of our rules of statutory construction.

In addition, the writer of the dissenting opinion accuses the majority of ignoring the second paragraph of W.Va.Code § 5–1–11(b). This is not true. As clearly explained in the majority opinion, W.Va.Code § 5–1–11(b) simply does not address the instant facts— waiver of extradition by an individual who has also been charged with committing a crime in West Virginia.

Finally, the writer of the dissenting opinion inaccurately characterizes the majority opinion as permitting a prosecuting attorney solely to decide questions relating to waiver of extradition. To the contrary, the majority properly construes the applicable statute to preserve the right, power, and privilege of this State to try a person charged with a crime before that person is permitted to leave the State. Significantly, as noted in the majority opinion, the result of the position advocated by the writer of the dissenting opinion would leave the decision of whether a defendant may be extradited to another state, prior to prosecution in this State, entirely up to the defendant. Such a result would be absurd and certainly not what the Legislature intended.

Accordingly, for the reasons set forth above, I concur.